BUNDO v CITY OF WALLED LAKE

Docket No. 55935. Argued March 5, 1975 (Calendar No. 8).—Decided
    January 27, 1976.

Plaintiff, Benjamin Bundo, Jr., obtained a class C liquor license
    issued by the defendant Liquor Control Commission, along with
    an entertainment permit approved by defendant City of Walled
    Lake. The issuance of the local permit was conditioned on
    plaintiff's agreement not to have "stripping" or "go-go" dancing
    on the premises of his establishment. The city council re-
    quested that the Liquor Control Commission revoke plaintiff's
    license after he began to offer topless entertainment; this
    request was later changed to a recommendation to the commis-
    sion that it refuse to renew the liquor license. Plaintiff was not
    notified of the council's intent to recommend non-renewal nor
    was he afforded a hearing on the matter. The recommendation
    had the effect under the Michigan Liquor Control Act of
    compelling the commission to refuse to renew plaintiff's license.
    The commission notified the plaintiff that his liquor license
    would not be renewed. Plaintiff initiated proceedings in the
    Oakland Circuit Court, Farrell E. Roberts, J., and obtained an
    order preventing both the city and the commission from taking
    further action to revoke or refuse to renew the liquor license
    and entertainment permit. Later, the circuit court granted the
    city's motion for summary judgment and vacated all restrain-
    ing orders. The Court of Appeals, McGregor, P. J., and R. B.
    Burns and O'Hara, JJ., affirmed (Docket No. 18860). Plaintiff
    appeals. *Held:*

    1. A licensee seeking a renewal of a liquor license under the
    Michigan Liquor Control Act has an interest in property such
    that he is entitled to due process protection.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4–7] 45 Am Jur 2d, Intoxicating Liquors §§ 32, 117.
[2, 8–12] 45 Am Jur 2d, Intoxicating Liquors §§ 174, 175.
    Grant or renewal of liquor license as affected by fact that applicant
        held such license in the past. 2 ALR2d 1239.
[3, 13] 45 Am Jur 2d, Intoxicating Liquors §§ 190, 191.
    Right to hearing before revocation or suspension of liquor license.
        35 ALR2d 1067.

2. A licensee must be afforded the procedural safeguards of notice and hearing before a local legislative body can recommend non-renewal of his license to the Liquor Control Commission.

3. Plaintiff must be afforded "rudimentary due process" and this requires: (1) timely written notice detailing the reasons for proposed administrative action; (2) an effective opportunity to defend by confronting any adverse witness and by being allowed to present in person witnesses, evidence, and arguments; and (3) a written, although relatively informal, statement of findings. The local body itself may conduct the hearing.

4. Where there is no showing of an abuse of discretion or an arbitrary exercise of power, there can be no judicial review. However, when a showing can be made that the local bodies have acted arbitrarily and capriciously then judicial review is appropriate.

5. Since this is a case of first impression and since it has not been the custom to provide notice and hearing in recommending denial, the rule of this case will apply only to denials recommended after the date of this opinion, and to any case still pending where the issue was raised and is still preserved as of that date.

The cause is remanded for further action not inconsistent with the opinion.

Justice Levin, with whom Chief Justice Kavanagh concurred, would hold that an application for renewal of a liquor license may not, consistent with the Due Process Clause, be denied without notice to the licensee and an opportunity for an evidentiary hearing, but would remand to the Liquor Control Commission for proceedings consistent with his opinion in *Bisco's, Inc v Liquor Control Commission,* also decided today.

53 Mich App 317; 218 NW2d 869 (1974) reversed.

OPINION OF THE COURT

1. INTOXICATING LIQUORS—LICENSES—RENEWAL—INTEREST—PROPERTY —DUE PROCESS.

A licensee seeking renewal of a liquor license under the Michigan Liquor Control Act has an "interest" in "property" such that he is entitled to due process protection (MCL 436.17).

2. INTOXICATING LIQUORS—LICENSES—RENEWAL—JUDICIAL REVIEW.

Arbitrary and capricious actions by local legislative bodies in recommending to the Michigan Liquor Control Commission that liquor licenses not be renewed are subject to judicial review.

3. INTOXICATING LIQUORS—LICENSES—REVOCATION—NOTICE—HEARING —RENEWAL.

Under the Michigan Liquor Control Act, liquor licenses may be revoked upon the request of a local legislative body but only after proper notice and hearing by that body, while in the case of applications for renewal of existing licenses the local legislative body may object and such action will compel the Michigan Liquor Control Commission to deny renewal even though no notice or hearing has been afforded the license holder (MCL 436.17).

4. INTOXICATING LIQUORS—LICENSES—REGULATION—DUE PROCESS.

The regulation of establishments selling alcoholic beverages is a special area and one in which the local community has been given a great deal of control; however, if a person has important interests which otherwise would be entitled to the protection of procedural due process, he cannot be denied this constitutional safeguard because the business in which he is engaged happens to involve alcoholic beverages.

5. CONSTITUTIONAL LAW—DUE PROCESS—LIBERTY—PROPERTY.

In deciding whether one is being deprived of liberty or property so that due process is required the courts must look not to the "weight" but to the nature of the interest at stake; the concepts of "liberty" and "property" are not to be defined in a narrow or technical sense but are to be given broad application; the archaic distinction between rights and privileges no longer has any applicability in the area of procedural due process.

6. INTOXICATING LIQUORS—PROPERTY—RIGHTS—PRIVILEGE.

The mere fact that an interest exists by the grace of the government no longer precludes that interest from being treated as a property right and those cases which have relied upon the distinction between rights and privileges in finding no property interest in a liquor license can no longer be followed for this purpose.

7. CONSTITUTIONAL LAW—DUE PROCESS—PROPERTY.

While a property interest entitled to due-process protection may be less than a formal contractual right, it must be based on more than a mere unilateral expectation.

8. INTOXICATING LIQUORS—LICENSES—RENEWAL—PROPERTY—DUE PROCESS.

The statutory scheme for renewal of liquor licenses is geared to permit renewal to take place as a matter of course and licensees have made substantial investments of time and money on

the understanding that a licensee will be permitted to operate his establishment for more than one year; such reasonable reliance upon the licensing practice gives a licensee a property interest in renewal which is entitled to due process protection (MCL 436.17).

9. INTOXICATING LIQUORS—LICENSES—RENEWAL—DUE PROCESS—NO-
   TICE.

   The holder of a liquor license which a local governing body proposes to recommend not be renewed must be afforded what has come to be called rudimentary due process, which requires timely written notice detailing the reasons for the proposed administrative action, an effective opportunity to defend by confronting any adverse witnesses and by being allowed to present in person witnesses, evidence, and arguments, and a written, although relatively informal, statement of findings (MCL 436.17).

10. INTOXICATING LIQUORS—LICENSES—NONRENEWAL—JUDICIAL RE-
    VIEW.

    The courts may consider whether a local legislative body has acted in an arbitrary and capricious manner in recommending to the Liquor Control Commission that an existing liquor license not be renewed (MCL 436.17).

11. INTOXICATING LIQUORS—LICENSES—RENEWAL—LOCAL LEGISLATIVE
    BODIES—ARBITRARY AND CAPRICIOUS ACTION—JUDICIAL REVIEW.

    The power of local communities to control alcoholic beverage traffic is extremely broad but does not permit local legislative bodies to act arbitrarily and capriciously, and when the local bodies conduct themselves in such a manner their actions are reviewable by the courts.

12. INTOXICATING LIQUORS—LICENSES—RENEWAL—NOTICE—HEARING.

    The Michigan Liquor Control Act is construed to require that before a local legislative body can recommend non-renewal of liquor licenses to the Michigan Liquor Control Commission, the licensee affected must be given notice and a hearing (MCL 436.17).

SEPARATE OPINION

KAVANAGH, C. J., and LEVIN, J.

13. INTOXICATING LIQUORS—LICENSES—RENEWAL—CONSTITUTIONAL
    LAW—DUE PROCESS.

    *An application for renewal of a liquor license under the Michigan*

*Liquor Control Act may not, consistent with the Due Process Clause, be denied without notice to the licensee and an opportunity for an evidentiary hearing (MCL 436.17; MSA 18.988, US Const, Am XIV).*

*Paul G. Valentino, J. D., P. C.,* for plaintiff.

*Brennan & Bibeau, P. C.* (by *Joseph T. Brennan),* for defendant.

WILLIAMS, J. We are asked in this case to decide 1) whether an individual seeking a renewal of a class C resort liquor license under § 17 of the Michigan Liquor Control Act (MLCA)[1] has an "interest" in "property" such that he is entitled to due process protection, 2) if such an interest exists, what process is due the individual and 3) whether arbitrary and capricious actions by local legislative bodies in recommending to the Michigan Liquor Control Commission (MLCC) that liquor licenses not be renewed are subject to judicial review.

In answering questions one and three affirmatively and in setting forth basic due process requirements to be followed, we have not diminished the authority of local bodies to control the traffic in alcoholic beverages according to the best interests of the local community. Rather, we have enhanced the legitimacy of this authority by insuring that the rights of individuals are adequately protected and that abuses of discretion are not left unchecked.

## I—FACTS

As the Court of Appeals suggested, "this is not a lawsuit about topless dancing". *Bundo v Walled Lake,* 53 Mich App 317, 318; 218 NW2d 869 (1974).

---

[1] MCLA 436.17; MSA 18.988.

The nature of the entertainment involved is irrelevant to the question whether the Walled Lake City Council, in recommending nonrenewal of plaintiff's liquor license, must first give plaintiff notice and a hearing. The following brief summary of the facts is offered simply to describe the context in which the legal issues arose.

In April, 1967, plaintiff, Benjamin Bundo, Jr., obtained a class C liquor license issued by the Michigan Liquor Control Commission, defendant, along with an entertainment permit approved by defendant City of Walled Lake. The issuance of the local permit was conditioned by plaintiff's agreement not to have "stripping" or go-go dancing on the premises of his establishment.[2]

Plaintiff's liquor license and entertainment permit were renewed without incident for the years 1968 through 1971 but during 1971 plaintiff began to offer topless entertainment and that's when the problem arose. The city council requested that the MLCC revoke plaintiff's license. This request was later changed to a recommendation to the MLCC that it refuse to renew the liquor license. This recommendation had the effect under § 17 of the MLCA of compelling the MLCC to refuse to renew plaintiff's license. Plaintiff was never notified of the council's intent to take such action in recommending nonrenewal nor was he afforded a hearing on the matter.[3] Acting on the recommendation of the city council, the MLCC notified the plaintiff on February 14, 1972, that his liquor license would not be renewed.

---

[2] The Court of Appeals ruled that this agreement was without legal effect and the parties do not appear to dispute that finding in the present appeal.

[3] Apparently, some form of hearing was held by the council where they discussed the recommendation of nonrenewal, but plaintiff was never notified that such a proceeding was to be held.

Plaintiff initiated proceedings in Oakland Circuit Court and obtained an order preventing both the city and MLCC from taking further action to revoke or refuse to renew the liquor license and entertainment permit. Plaintiff's liquor license was renewed twice through April 1974. On October 29, 1973, the circuit court granted the city's motion for summary judgment and vacated all restraining orders. Appeal was taken to the Court of Appeals which on April 18, 1974 entered an order conditionally continuing plaintiff's liquor license until further order by that Court.

On May 2, 1974 the Court of Appeals affirmed the lower court's summary judgment in favor of the defendant. *Bundo v Walled Lake,* 53 Mich App 317; 218 NW2d 869 (1974). We granted leave on June 24, 1974. 392 Mich 755. We reverse and remand.

## II—DUE PROCESS

The question whether procedural due process must be afforded in this case under the Constitutions of the United States[4] and Michigan[5] arises in a particularly difficult context. First, it concerns neither revocation of an existing license nor application for a new license but renewal of an existing license.[6] Second, it involves, as was previously

---

[4] US Const, Am XIV.

[5] Const 1963, art 1, § 17.

[6] Courts in other jurisdictions have been somewhat more hesitant to provide due process safeguards where an interest has yet to be acquired as opposed to the deprivation of an interest already acquired. *Scarpa v United States Board of Parole,* 477 F2d 278, 282 (CA 5, 1973). *See Dorado v Kerr,* 454 F2d 892 (CA 9, 1972), *cert den,* 409 US 934; 93 S Ct 244; 34 L Ed 2d 188 (1972); *United States ex rel Bey v Connecticut State Board of Parole,* 443 F2d 1079, 1086 (CA 2, 1971), vacated as moot, 404 US 879; 92 S Ct 196; 30 L Ed 2d 159 (1971); *Menechino v Oswald,* 430 F2d 403, 408 (CA 2, 1970), *cert den,* 400 US 1023; 91 S Ct 588; 27 L Ed 2d 635 (1971).

suggested, an area of regulation in which great deference has been given to local control.

Section 17 of the MLCA which establishes the statutory framework for issuing licenses to establishments selling alcoholic beverages provides in pertinent part:

"*All applications* for licenses to sell beer and wine or spirits for consumption on the premises, except in counties of 1,000,000 population or over, *shall be approved by the local legislative body* in which said applicant's place of business is located before being granted a license by the commission, *except that in the case of an application for renewal of an existing license, where no objection to a renewal has been filed with the commission by the local legislative body, prior to 30 days before the date of expiration of the license, the approval of the local legislative body shall not be required.* Upon request of the local legislative body in any county of less than 1,000,000 population, after due notice and proper hearing by the body, the commission shall revoke the license of any licensee granted a license to sell beer and wine or spirits for consumption on the premises." (Emphasis added.)

Under § 17 liquor licenses may be *revoked* upon the request of a local legislative body, but only after proper notice and hearing by that body, while in the case of applications for *renewal* of existing licenses, the local legislative body may object and such action will compel the MLCC to deny renewal even though no notice or hearing has been afforded the license holder.

Plaintiff argues that he has an "important interest" which is affected by the decision not to renew his license and citing *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29 L Ed 2d 90 (1971); *Sniadach v*

*Family Finance Corp of Bay View,* 395 US 337; 89
S Ct 1820; 23 L Ed 2d 349 (1969); *Goldberg v Kelly,*
397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1969),
contends he must be afforded rudimentary due
process.

Defendant City of Walled Lake maintains that
recent United States Supreme Court decisions
which have affected due process requirements in
licensing practices have no application to liquor
licensing because of the long-standing tradition
giving local municipalities wide latitude in regu-
lating this industry which is of substantial interest
to the community.

Defendant is correct in its characterization that
the regulation of establishments selling alcoholic
beverages is a special area and one in which the
local community has been given a great deal of
control. See *Crowley v Christensen,* 137 US 86; 11
S Ct 13; 34 L Ed 620 (1890); *Johnson v Liquor
Control Commission,* 266 Mich 682, 685; 254 NW
557 (1934). However, if an individual has impor-
tant interests which otherwise would be entitled to
the protection of procedural due process, he cannot
be denied this constitutional safeguard because the
business in which he is engaged happens to in-
volve alcoholic beverages.

In *Wisconsin v Constantineau,* 400 US 433; 91 S
Ct 507; 27 L Ed 2d 515 (1971), the United States
Supreme Court struck down a Wisconsin statute
which permitted posting in establishments selling
alcoholic beverages the names of individuals who
were excessive drinkers. The act was voided be-
cause it failed to provide notice and hearing to the
individuals affected. The Court recognized that the
states' police power over intoxicating liquor is
extremely broad but nonetheless found that the
safeguards of due process must be afforded where

an important individual "interest" is involved.[7]

However, having established that the nature of one's business does not vitiate constitutional safeguards for "interests" otherwise entitled to constitutional protection leaves open the question whether the renewal of an existing liquor license under § 17 involves the type of individual "interest" which would normally qualify for due process protection.

The United States and Michigan Constitutions provide that no person shall be deprived "of life, liberty or property, without due process of law."[8] Thus the focus of our inquiry becomes whether the renewal of an existing liquor license under § 17 of the MLCA involves a private "interest" which is either "liberty" or "property" within the meaning of the due process clause of the United States and Michigan Constitutions.

In *Board of Regents v Roth,* 408 US 564; 92 S Ct 2701; 33 L Ed 2d 548 (1972), and *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 570 (1972), the United States Supreme Court discussed in some detail the nature of "liberty" and "property" protected by the due process clause of the Fourteenth Amendment. It is particularly appropriate that we turn our inquiry to an examination of these important cases because the Supreme

[7] Justice Douglas, speaking for the Court, said:

"We have no doubt as to the power of a State to deal with the evils described in the Act. The police power of the States over intoxicating liquors was extremely broad even prior to the Twenty-first Amendment. *Crane v Campbell,* 245 U. S. 304 [38 S Ct 98; 62 L Ed 299 (1917)]. The only issue present here is whether the label or characterization given a person by 'posting,' though a mark of serious illness to some, is to others such a stigma or badge of disgrace that procedural due process requires notice and an opportunity to be heard. We agree with the District Court that the private interest is such that those requirements of procedural due process must be met." *Wisconsin v Constantineau, supra,* 436.

[8] United States Const, Am XIV, and Const 1963, art 1, § 17.

Court in *Kenosha v Bruno,* 412 US 507; 93 S Ct 2222; 37 L Ed 2d 109 (1973), remanded an action to a three-judge district court for consideration whether under *Roth* and *Sindermann,* tavern owners' due process rights were violated when local Wisconsin municipalities, without affording notice and an adversary as opposed to a legislative hearing, refused to renew their one-year liquor licenses.[9]

The *Roth* and *Sindermann* cases, both summary judgment cases, involved the property rights in tenure for college professors who were not rehired by their respective institutions.

Roth was employed as an assistant professor for a fixed term of one year. The position was his first teaching job and the fixed term was specified in the notice of his faculty appointment. Tenure at the university where he was employed accrued only after four years of year-to-year teaching. During his first year Roth was critical of the college administration and was informed, without being given a hearing, that he would not be hired the following year.

Sindermann had been teaching in the state college system for ten years, the last four years at one college where he held the position of professor under a succession of one-year contracts. No formal tenure was in effect. Like Roth, Sindermann was critical of his university's administration and, without being afforded a hearing, was informed that he would not be rehired.

In *Roth* the Supreme Court held that because the one-year appointment gave him no entitlement to tenure, the plaintiff had failed to establish that

---

[9] In *Manos v Green Bay,* 372 F Supp 40 (ED Wis, 1974), another district judge found that under *Roth* and *Perry* the plaintiff had a protected interest in the renewal of his liquor license that was entitled to due process protection.

the decision not to rehire him had deprived him of an interest in "property" or "liberty". However, in *Sindermann,* the Court recognized that the alleged circumstances of his employment could create a quasi-tenure which could form the basis of a sufficient "property" interest in re-employment to require the giving of procedural due process protection.

In its *Roth* and *Sindermann* decisions the Supreme Court has given us an insight into the meaning of "liberty" and "property". First, in deciding whether due process is required the courts must "look not to the 'weight' but to the *nature* of the interest at stake". *Roth, supra,* 571. Second, the concepts of "liberty" and "property" are not to be defined in a narrow or technical sense but are to be given broad application. The Court stated:

" 'Liberty' and 'property' are broad and majestic terms. They are among the '[g]reat [constitutional] concepts * * * purposely left to gather meaning from experience. * * * [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.' *National Ins Co v Tidewater Co,* 337 US 582, 646 [69 S Ct 1173; 93 L Ed 1556 (1949)] (Frankfurter, J., dissenting)." *Roth, supra,* 571.

"We have made it clear in *Roth, supra,* at 571–572, that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' *Id.,* at 577." *Sindermann, supra,* 601.

Third, the Court made it clear that the archaic rights/privilege distinction no longer has any applicability in the area of procedural due process.

Leaving no possible doubt the Court indicated that it had:

"fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." (Footnote omitted.) *Roth, supra,* 571.[10]

Consequently, defendant in this case has misplaced its reliance on those Michigan cases which have held that a liquor license is not a "property right" because it is a "privilege granted by the state".[11] Whatever viability the "rights/privilege" doctrine had in Michigan jurisprudence in the past, under the holdings of the United States

[10] *See Graham v Richardson,* 403 US 365, 374; 91 S Ct 1848; 29 L Ed 2d 534 (1971); *Bell v Burson,* 402 US 535, 539; 91 S Ct 1586; 29 L Ed 2d 90 (1971); *Shapiro v Thompson,* 394 US 618, 627, fn 6; 89 S Ct 1322; 22 L Ed 2d 600 (1969); *Sherbert v Verner,* 374 US 398, 404; 83 S Ct 1790; 10 L Ed 2d 965 (1963).

[11] To support its argument that a license is not a "property" right defendant cites *People v Schafran,* 168 Mich 324, 330; 134 NW 29 (1912); *Morse v Liquor Control Commission,* 319 Mich 52, 66; 29 NW2d 316 (1947); *Commercial Acceptance Corp v Benvenuti,* 341 Mich 100, 103; 67 NW2d 129 (1954); and *Fitzpatrick v Liquor Control Commission,* 316 Mich 83, 92; 25 NW2d 118 (1946). Each of these cases seize upon the concept of license as a privilege. The language in *Morse, supra,* 66, is representative on this point:

"Notwithstanding that the liquor business is entirely lawful, no one has an inherent right to a liquor license which is a privilege granted by the State under proper restrictions. *Case v Liquor Control Commission,* 314 Mich 632 [1946]. A liquor license is not a contract in the sense that the licensee has thereby acquired any vested or property rights, but is in the nature of a permit subject to the control of the State in the exercise of its police power. *Fitzpatrick v Liquor Control Commission,* 316 Mich 83 (172 ALR 608)."

*Johnson v Liquor Control Commission,* 266 Mich 682; 254 NW 557 (1934), cited by the defendant as one of the leading cases regarding the power of the local community to control the traffic in alcoholic beverages, stated:

"A license is not a property right within the meaning of the due process clause." 266 Mich 687.

But *Johnson* as did the other cases cited by the defendant relied on *People v Schafran, supra,* or other cases which found that a license is not property because it is a mere privilege.

Supreme Court the mere fact that an interest exists by the grace of the government no longer precludes that interest from being treated as a "property" right. Those Michigan cases which have relied upon this doctrine in finding no property interests in liquor licenses no longer can be followed for this purpose.

The United States Supreme Court held that while property may be less than a formal contractual right, it must be based on more than a mere unilateral expectation. As the Court noted in *Roth:*

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." 408 US 564, 577.

And in *Sindermann:*

"[T]he mere showing that he was not rehired in one particular job, without more, did not amount to a showing of a loss of liberty [footnote omitted]. Nor did it amount to a showing of a loss of property." 408 US 593, 599.

In *Roth* the plaintiff was in what might be called a "probationary" status.[12] He may have had

---

[12] In Michigan teachers before they receive tenure must serve a "period of probation" for two years. *See* teacher tenure act, MCLA 38.81; MSA 15.1981.

a hope or unilateral expectation that he would be rehired for the next year but he had little else. The Court took care to emphasize that Roth's employment terminated as of the first year on a specific date and there was no provision whatever for renewal.

Although there was no official tenure system, the Court in *Sindermann* found that a quasi-tenure system had been created in practice and that something approaching a mutual understanding existed since teachers in Sindermann's situation were rehired from year to year as long as they continued to perform their duties successfully. Also the Court found that the teachers had legitimately relied on this practice.

We find the interest of a licensee in obtaining a renewal of his liquor license is very much like the property interest of Sindermann. Once a license is issued under § 17 of the MLCA the holder of that license is not in the type of probationary status that Roth found himself.[13] A holder of a liquor license in Michigan can reasonably assume, as could Sindermann with regard to his teaching position, that there was a great likelihood that his license would be renewed.

The procedure for obtaining a new license and that for renewing an existing license are quite different. Under § 17 every application for a new license must gain the approval of the local legislative body before the Liquor Control Commission may issue a license. However, when renewal is sought no local action is required unless the local community itself seeks to block the renewal. Un-

---

[13] Of course the MLCC may impose conditions upon the issuance of a license. *See Bisco's, Inc v Liquor Control Commission,* 395 Mich 706; 238 NW2d 166 (1975). No such condition has been placed on plaintiff Bundo's license by the MLCC.

der § 91 of the Administrative Procedures Act[14] if a licensee makes a timely application for renewal of a license, that license does not expire until a decision on the application is finally made. The statutory scheme for renewal of liquor licenses is geared to permit renewal of licenses to take place as a matter of course.

The expenditures made by proprietors of establishments selling alcoholic beverages attest to the fact that something in the nature of an understanding exists that once a license is granted a licensee will be permitted to operate his establishment for more than one year. Were the practice any different, no one would take the risk of opening such an establishment or making the necessary expenditures. As did Sindermann under the quasi-tenure system, liquor licensees have reasonably relied upon an existing practice and based upon this understanding they have made substantial investments in time and money.

In *Roth* the Court suggested that the mere loss of employment does not constitute a deprivation of liberty or property because the individual is free to seek employment elsewhere. A liquor license holder does not share the same luxury. If he loses his license he cannot simply go elsewhere in the state and resume his livelihood. Rather he must first apply for a new license before he can operate. As discussed above the process for obtaining a new

[14] Section 91 provides in pertinent part:

"When a licensee makes timely and sufficient application for renewal of a license or a new license with reference to activity of a continuing nature, the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order or a later date fixed by order of the reviewing court. This subsection does not affect valid agency action then in effect summarily suspending such license under section 92." MCLA 24.291; MSA 3.560(191).

license is considerably more difficult than having an existing license renewed.

In *Manos v Green Bay,* 372 F Supp 40, 49 (ED Wis, 1974), a suit involving a tavern owner whose license was not renewed by a local city council, a Federal district court judge ruled that an owner had a substantial property interest in the renewal of his license. The judge held as follows:

"My findings are two-fold: first, plaintiff has shown a broad range of interests emanating from his investment in the tavern business, which are affected by the City Council's action; and second, in these situations, the existing understanding is such that once a liquor license is granted, the likelihood that it will be renewed is very great. Therefore, under my reading of both *Board of Education [sic] v Roth, supra,* and *Perry v Sindermann, supra,* plaintiff has shown that he had a 'property' interest in the renewal of his liquor license."

We likewise conclude that plaintiff, who first obtained his license in 1967 and had that license renewed without incident for the years 1968, 1969, 1970, and 1971, who reasonably relied upon a licensing practice which provided for renewal as a matter of course in most instances, has a property interest which would entitle him to due process protection.

By holding that the plaintiff is entitled to procedural safeguards we are protecting not only the rights of the individual licensee but the interests of the community as well. At a time when this country is experiencing a crisis in confidence in our governing institutions, it is essential that decisions affecting the public welfare be made in such a way that all interested parties be given an opportunity to be heard. When decisions are made without giving those affected the right to present

their side of the case, by failing to give them proper notice and/or hearing, the way is open for abuse of the public trust by governmental officials.[15]

### III—WHAT PROCESS IS DUE

The question remains as to what process is due the plaintiff. In answering this question we must balance the seriousness of the deprivation against the governmental interest involved. See *Goldberg v Kelly, supra.* To the individual the renewal of the liquor license means the continuation of his livelihood and protection of the expenditures he has made. On the other hand the community is concerned with the proper regulation of an activity which historically has been a matter of great interest.

Balancing these interests, we conclude that the plaintiff must be afforded what has come to be called "rudimentary due process". In *Sponick v Detroit Police Department,* 49 Mich App 162, 189; 211 NW2d 674 (1973), rudimentary due process was said to require:

"(i) timely written notice detailing the reasons for proposed administrative action; (ii) an effective opportunity to defend by confronting any adverse witnesses and by being allowed to present in person witnesses, evidence, and arguments; (iii) a hearing examiner other than the individual who made the decision or determination under review; and (iv) a written, although relatively informal, statement of findings. *Goldberg v Kelly, supra; Wheeler v Montgomery,* 397 US 280; 90 S Ct 1026; 25 L Ed 2d 307 (1970); *Morrissey v Brewer, supra*

---

[15] We are in no way suggesting that the city officials in Walled Lake have abused their power but speak only to the general danger inherent when decisions affecting the interests of the public and private individuals as well are made in such a way as to deny some the right to be heard.

[408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972)]; and
*Gagnon v Scarpelli,* 411 US 778, 786; 93 S Ct 1756,
1761–1762; 36 L Ed 2d 656, 664 (1973). See also *Dation
v Ford Motor Co,* 314 Mich 152, 163; 22 NW2d 252, 256
(1946); *Napuche v Liquor Control Commission,* 336
Mich 398, 403; 58 NW2d 118, 120–121 (1953)."

We find it necessary to impose one modification
upon this general requirement in order to better
fit the needs and interests involved in this case.
There should be no requirement that the hearing
examiner be someone other than the members of
the local legislative body. To require an indepen-
dent examiner would deprive the local body of
discretion to rule on the matter. The local body
itself may conduct the hearing.

As indicated above, § 17 of the MLCA does not
expressly require that the licensee receive notice
and hearing before the local legislative body may
recommend to the MLCC that an individual's li-
quor license not be renewed. However, "we are
duty bound under the Michigan Constitution to
preserve the laws of this state and to that end to
construe them if we can so that they conform to
Federal and state constitutional requirements".
*People v Bricker,* 389 Mich 524, 528; 208 NW2d
172 (1973). Under this rule set forth in *Bricker,* we
construe that portion of § 17 dealing with the
renewal of liquor licenses to require that before a
local legislative body can recommend nonrenewal
to the MLCC, the licensee affected must be af-
forded the procedural safeguards set out in this
opinion.

## IV—THE SCOPE OF REVIEW

Whether a court has the right to review the
decision of a local legislative body regarding the

renewal of liquor licenses is independent of the question whether in making such decisions local bodies must afford the individual procedural due process.

The City of Walled Lake, relying upon *Hanson v Romeo Village Council,* 339 Mich 612; 64 NW2d 570 (1954) and *Johnson v Liquor Control Commission,* 266 Mich 682; 254 NW 557 (1934), contends that it is the law of this state that local legislative bodies enjoy absolute discretion on matters pertaining to liquor licensing and are not subject to judicial review. The Court of Appeals below concluded quite reluctantly that defendant was correct. The Court stated:

"we are forced to conclude that it is the law of this state at present that the most decorous licensed establishment with an untainted record of strict compliance with all relevant statutes, ordinances, and Liquor Control Commission regulations may, upon the whim of a local legislative body, be denied renewal of its license, however arbitrarily or capriciously this is done." 53 Mich App 317, 320.

Upon a review of the appropriate constitutional and legislative provisions as well as prior decisions of this Court, it is our conclusion that, while judicial review is extremely narrow, the courts may nonetheless consider whether the local legislative body has acted in an arbitrary and capricious manner in recommending to the MLCC that an existing liquor license not be renewed. Prohibition of judicial review is neither mandated by the constitution or the MLCA nor is it necessary to the preservation of the local community's traditional power to exercise broad discretion over liquor licensing.

Article 4, § 40 of the Michigan Constitution sets

forth the manner in which the traffic in alcoholic beverages shall be controlled in this state. The provision provides that:

"The legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same."

Under this section of the constitution the Liquor Control Commission is given complete authority to regulate alcoholic beverage traffic subject only to limitations imposed by the Legislature.

In *Johnson v Liquor Control Commission, supra,* this Court upheld the constitutionality of the statutory forerunner to § 17 of the MLCA. The Court held that the power conferred on the local legislative bodies in the area of liquor licensing was not an unconstitutional delegation of authority but rather was a restriction imposed by the state Legislature on the Liquor Control Commission's authority to control the traffic in alcoholic beverages. The Court said in *Johnson:*

"We believe that this latter provision is not an invalid delegation of power. It is merely a statutory limitation properly imposed by the legislature, in accordance with the constitutional mandate, upon the power to be exercised by the commission. A licensee in counties of less than 500,000 accepts his license subject to these conditions. The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor com-

mission as to those matters wherein the commission is given exclusive powers by the legislature. While the legislature, as a general rule, cannot delegate its legislative powers, it may confer upon municipal corporations the powers of local government, particularly in regard to local taxation and police regulations. 1 Cooley's Constitutional Limitations (8th ed), p 389." 266 Mich 682, 685.

We are not asked in the present proceeding to re-examine this analysis. The reasoning in *Johnson* suggests that the local legislative bodies' authority under § 17 of the MLCA to effectively block the renewal of an existing liquor license is not an improper delegation of power but rather is a legislatively imposed restriction or check on the power of the Liquor Control Commission in this area. However, if the courts are precluded from reviewing the arbitrary and capricious actions of the local bodies, the question then becomes what is the check on the local legislative body's power to prevent renewal of liquor license for any reason whatsoever. It is unlikely that the drafters of Const 1963, art 4, § 40 or MLCA, § 17 intended that the local communities should have unbridled and unrestricted control over liquor licenses. On the contrary both the constitutional and statutory provisions made provision for a system of checks on absolute control.

We will not ascribe an intent to the Legislature that the local bodies be given unbridled power to block the renewal of licenses. Rather, we reaffirm a principle recognized early in this Court's history but subsequently lost in later opinions, that principle being that the power of the local communities to control alcoholic beverage traffic is extremely broad but does not permit local legislative bodies to act arbitrarily and capriciously and further,

when the local bodies conduct themselves in such a manner their actions are reviewable by the courts.

In *Sherlock v Stuart*, 96 Mich 193; 55 NW 845 (1893), this Court first addressed itself to the question of judicial review of determinations by local municipalities relating to the regulation of traffic in alcoholic beverages. Emphasizing the importance of local control in this area, the Court concluded that when the mayor and the city council had exercised their discretion in good faith and denied a renewal of a liquor license, their decision could not be reviewed by the courts. However, the Court was careful to note that there was no evidence of arbitrary or capricious action. The Court stated:

"The reason given by the mayor for his veto is that the place specified in the petition is unsuitable for a saloon. He presented this reason at length in his message, from which it appears that he has acted in entire good faith, and not from mere caprice, or arbitrarily.

* * *

"When the mayor and council have in good faith exercised the discretion conferred upon them by the law, courts cannot review it. There is nothing in this case showing any abuse of discretion, or the arbitrary exercise of power. The action of the mayor, therefore, can only be reviewed by the common council." 96 Mich 196, 200.

The thrust of this case is clear. Where there is no showing of an abuse of discretion or an arbitrary exercise of power, there can be no judicial review. However, when a showing can be made that the local bodies have acted arbitrarily and capriciously then judicial review would be appropriate.

In *Sherlock,* the Court was concerned with pro-
tecting the discretion of the local communities in
order that they might effectively control the traffic
in alcoholic beverages according to the best inter-
ests of the community. The Court was not seeking
to shield abuses of this discretion.

In *Johnson v Liquor Control Commission, supra,*
discussed above, the Court restated the theme set
forth in *Sherlock* that local control was essential
with regard to alcoholic beverage traffic and conse-
quently the local governing bodies must be given
wide latitude. However, the Court took care to
note that the plaintiff did not "allege that the
action of the common council was either arbitrary
or capricious, nor [did] he raise the question as to
whether he would be entitled to resort to the
courts were the council's action of that character".
266 Mich 682, 683.[16]

However, later cases lost the important distinc-
tion between the legitimate exercise of discretion
and arbitrary and capricious actions taken by local
governing bodies. Thus in *Scott v Arcada Twp
Board,* 268 Mich 170, 174; 255 NW 752 (1934),
*Johnson v Liquor Control Commission, supra,* was
misconstrued and the Court held:

"The discretion to be exercised by the board under
this statute in acting upon the application here made
means the power or right to act officially according to
what appears to it to be just and proper under the
circumstances, and action so taken by it is not subject

----

[16] Thus, the seemingly unqualified statement in *Johnson, supra,*
687, that "[w]e do not believe that the statute is an unconstitutional
deprivation of property without due process of law, in that it makes
no provision for a review or appeal from the determination by the
local body" must be read in light of the Court's earlier declaration
that it was not addressing itself to the question of whether one could
resort to the courts if the council's action was of an arbitrary or
capricious nature.

to review by a court. As was said in the recent case of *Johnson v Liquor Control Com'n,* 266 Mich 682, 685:

" 'The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor commission as to those matters wherein the commission is given exclusive powers by the legislature.' "

And in *Hanson v Romeo Village Council,* 339 Mich 612, 615; 64 NW2d 570 (1954), relying on *Scott, supra,* the Court said:

"CLS 1952, § 436.17 (Stat Ann 1953 Cum Supp § 18.988), which, by its own terms, applies to all licenses for sales of spirits for consumption on the premises and vests in the local legislative body full power and discretion with respect to approval of such licenses. Even though exercised in an arbitrary and capricious manner, we do not review it. *Scott v Arcada Township Board,* 268 Mich 170. There is, accordingly, no validity to plaintiffs' contention."

*Hanson* and the other cases which have misconstrued the law no longer can be followed. In those instances where there has been a showing that the actions of the local legislative bodies in recommending nonrenewal of liquor licenses under § 17 of the MLCA have been arbitrary and capricious, those actions are subject to judicial review.[17]

---

[17] The words "arbitrary" and "capricious" have generally accepted meanings. The United States Supreme Court has defined the terms as follows:

Arbitrary is: " '[W]ithout adequate determining principle * * * Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, * * * decisive but unreasoned' ".

Capricious is: " '[A]pt to change suddenly; freakish; whimsical; humorsome' ".

*United States v Carmack,* 329 US 230, 243; 67 S Ct 252; 91 L Ed 209 (1946).

V—CONCLUSION

We hold that a licensee has a "property" interest in the renewal of his liquor license such that before he may be deprived of this interest he must be afforded rudimentary due process. We construe that portion of § 17 of the MLCA concerning renewal of liquor licenses to require that before a local legislative body can recommend nonrenewal to the MLCC, the licensee affected must be given notice and a hearing. In so ruling we have not reduced the authority of communities to block renewal of liquor licenses, but have merely ruled that before depriving individuals of their property rights, notice and hearing must be afforded.

Likewise our holding that courts may review arbitrary and capricious actions taken by local legislative bodies in recommending to the MLCC that liquor licenses not be renewed in no way reduces the traditional and broad authority of these bodies to act and protect the interests of the local community. As indicated at the outset, this opinion in no way is called upon to, nor does it, decide the substantive question whether employing proper due process procedures a local legislative body may recommend the denial of a liquor license because of "topless dancing". That question is simply not before us. What our opinion does deal with is what procedures must be followed in recommending a denial for whatever purpose.

The Court of Appeals is reversed. This cause is remanded for further action not inconsistent with this opinion.

No costs, a public question of first impression being involved.

Since this is a case of first impression and since it has not been the custom to provide notice and

hearing in recommending denials such as this, the rule of this case will apply only to denials recommended after the issuance date of this opinion. It will also apply to any case still pending where this issue was raised and is still preserved as of the date of the issuance of this opinion.

COLEMAN and FITZGERALD, JJ., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

LEVIN, J. The pertinent facts and legal issues in this case are essentially the same as in *Bisco's, Inc v Liquor Control Commission, ante,* 395 Mich 706; 238 NW2d 166 (1975), decided today.

In this case, Bundo's liquor license is a class C license. Bisco's liquor license is for a B-hotel. Bundo had his license for several years before its nonrenewal, Bisco's for just one year.

As in *Bisco's,* Bundo's liquor license was not renewed because the local legislative body objected to its renewal, MCLA 436.17; MSA 18.988, and, as in *Bisco's,* Bundo was, without notice or opportunity for a hearing, notified by the Michigan Liquor Control Commission that his license would not be renewed.

For the reasons set forth in *Bisco's,* an application for renewal of a liquor license may not, consistent with the Due Process Clause, be denied without notice to the licensee and an opportunity for an evidentiary hearing.

We would remand this case to the commission for further proceedings consistent with our opinion in *Bisco's.* No costs, a public question.

KAVANAGH, C. J., concurred with LEVIN, J.