PEASE v ST. CLAIR SHORES CITY COUNSEL

Docket No. 77-3978. Submitted April 20, 1978, at Detroit.—Decided August 22, 1978.

Joyce Pease and Nashville North, Ltd., entered into an agreement to purchase a business operating under a class "C" liquor license held by Margery Crain at 23405 Jefferson Avenue in St. Clair Shores. Plaintiffs appeared before the City Council of the City of St. Clair Shores on four occasions and submitted plans detailing their proposal to transfer the license from 23405 Jefferson to an existing commercial building at 31501 Harper, St. Clair Shores. Each time the council denied the request for approval of the transfer.

Subsequently, Joyce Pease and Nashville North, Ltd., sought superintending control in the circuit court. Superintending control was granted ordering the defendant city council to approve the requested transfer, Macomb Circuit Court, Walter P. Cynar, J. The defendant appeals. *Held:*

In the absence of evidence in the record which would explain and justify the council's action, the Court of Appeals must concur with the trial court that the council acted arbitrarily in denying the application in this case.

Affirmed.

1. LICENSES—INTOXICATING LIQUORS—LIQUOR LICENSES—DENIAL OF LICENSE—SCOPE OF REVIEW—APPEAL AND ERROR.

The scope of judicial review of a local legislative body's disposition of requests for liquor licenses is extremely narrow and the local disposition will be overturned only upon a showing that it was arbitrary and capricious.

2. LICENSES—INTOXICATING LIQUORS—LIQUOR LICENSES—REASONS FOR DENYING LICENSE.

Some of the valid reasons for denying a liquor license to an applicant are: (1) the bad moral character of the applicant, (2) the applicant's lack of sufficient assets for the successful opera-

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors §§ 155, 159, 163.
[2] 45 Am Jur 2d, Intoxicating Liquors §§ 161, 162.

tion of the proposed business, because such licensees often succumb to the temptation of violating the law to alleviate financial difficulties, (3) a zoning prohibition on the sale of liquor at the location of the proposed place of business, and (4) the unfitness of the particular building for the proposed business, as where the building fails to conform to applicable established health, safety or fire codes.

3. LICENSES—INTOXICATING LIQUORS—LIQUOR LICENSES—DENIAL OF LICENSE—UNUSUAL CIRCUMSTANCE.

The denial of a liquor license must be based upon some unusual circumstance or other criteria that would reasonably justify such a refusal where there are no questions as to the qualifications of the applicant, the fitness and safety of the particular building or the legality of maintaining a liquor business in the requested location.

*John G. Thompson,* for plaintiffs.

*Killebrew & Fraser,* for defendant.

Before: D. F. WALSH, P. J., and D. E. HOLBROOK and R. M. MAHER, JJ.

D. F. WALSH, P. J. Defendant appeals from the circuit court's order of superintending control ordering it to approve a requested transfer of a class "C" liquor license to the plaintiffs.

In April, 1976, plaintiffs entered into an agreement to purchase a business operating under a class "C" liquor license held by Margery Crain at 23405 Jefferson Avenue. On four occasions plaintiffs appeared before defendant council and submitted plans detailing their proposal to transfer the license from 23405 Jefferson to an existing commercial building located at 31501 Harper, St. Clair Shores.[1] Each time the council denied plaintiffs' request for approval of the transfer.

Plaintiffs then instituted the present action. The

[1] Each successive proposal was modified to obviate the council's stated concerns regarding the transfer, most of which centered on the adequacy of available parking and the objections of certain local residents to the venture.

circuit court remanded the matter to the council for an informal written statement indicating the reasons for the denial. After consideration of the reasons submitted, the trial court found the denial arbitrary and capricious and ordered the requested transfer. The only issue briefed and contested by the parties is whether the trial court erred in its decision. We limit ourselves to that issue.

The scope of judicial review of a local legislative body's disposition of requests for liquor licenses is extremely narrow, *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976), and the local disposition will be overturned only upon a showing that it was arbitrary and capricious. *Bisco's, Inc v Liquor Control Comm,* 395 Mich 706; 238 NW2d 166 (1976).

Our review is hampered at the outset by the absence of any standards against which to measure the defendant's decision. Although our Supreme Court has stated that the Legislature did not intend that the local communities have "unbridled and unrestricted control over liquor licenses", *Bundo, supra,* at 700, our research has failed to uncover any Michigan cases indicating which factors may legitimately support the denial of an application for such a license.[2] We must look, therefore, to decisions from other jurisdictions.

It has been established that a license may be

---

[2] In other instances in which this Court reviews a lower tribunal's decision for abuse of discretion we refer to a body of existing law setting forth the standards against which the decision may be assessed. For example, decisions concerning the admission of evidence, the scope of cross-examination, the granting of a continuance, and a host of other matters are committed to the discretion of the lower tribunal. In such situations, the broadly stated rules governing those matters enable a reviewing court to render a principled determination as to whether discretion has been abused.

In the Case at bar, however, we have been unable to find any broad principles to serve as the outer parameters limiting the council's decision. Bereft of such guidance, review of that determination would amount to little more than deciding whether we agree with it. Conceptually such review could be criticized as permitting too wide a

denied because of the bad moral character of the applicant.

"One of the principal reasons underlying liquor license laws is to restrict liquor traffic to persons of good moral character who may be reasonably expected to keep their business free from greater vices, which have impelled restrictive legislation on the question." *Permenter v Younan,* 159 Fla 226, 230; 31 So 2d 387 (1947), see *Eddings v Davidson,* 302 So 2d 155 (Fla App, 1974); 45 Am Jur 2d, Intoxicating Liquors, § 149, p 595.

A license may also be denied where the applicant does not have sufficient assets for the successful operation of the proposed business, because such licensees often succumb to the temptation of violating the law to alleviate financial difficulties. *In the Matter of Samuel Tobkes v O'Connell,* 272 App Div 240; 70 NYS2d 494 (1947).

The location of the proposed place of business will justify denial of a license where the area in question has been zoned as one within which intoxicating liquor may not be sold. See *Churchill v Common Council of the City of Detroit,* 153 Mich 93; 116 NW 558 (1908). Similarly, refusal may be warranted due to the unfitness of the particular building, *Thielen v Kostelecky,* 69 ND 410; 287 NW 513; 124 ALR 820 (1939), as where the building fails to conform to applicable established health, safety or fire codes. Furthermore, in a given case, peculiar circumstances of time and place may provide legitimate bases for refusal to issue a license. See *Kirby v Alcoholic Beverage Control Appeal Board,* 7 Cal 3d 433; 102 Cal Rptr 857; 498 P2d 1105 (1972) (aggravation of existing

---

scope of review (if we simply disagree with the decision) or as providing no review at all (if we simply agree).

law enforcement problems due to youthful population and recent rioting).

However, where there are no questions as to the qualifications of the applicant, the fitness and safety of the particular building or the legality of maintaining a liquor business in the requested location, the denial of a liquor license must be based upon some unusual circumstance or other criteria that would reasonably justify such a refusal.[3]

In the instant case the reasons given by the council for denying plaintiffs' request are as follows:

"1. That the building was not originally designed to function as a restaurant and nightclub.

"2. That the parking for the cars, although technically in conformity with ordinance, has a vacant building situated in the middle of the parking lot which will remain vacant.

"3. That the building is in close proximity to a residential neighborhood and due to the nature of the entertainment to be provided would have an adverse effect on the peace, quiet and tranquility of the neighbors.

"4. That the Chief of Police and the City Manager have recommended against that use being established in that area because of the effect on the neighborhood.

"5. That the Council is concerned as to what use the

---

[3] An example of such "other criteria" is the list of priorities enacted by the City of Troy. *See Jones v City of Troy,* 405 F Supp 464 (ED Mich, 1975). Such guidelines, enacted in advance of a given application, are desirable in that they offer some protection to the individual against arbitrary denials; they serve as a guiding principle to the local body in passing upon future applications; and they are of great assistance to a reviewing court in discerning the rationality of the body's determination.

We emphasize that we do not herein intend to limit the legitimate broad discretion of local bodies in granting or denying liquor license applications. We are merely attempting to render the exercise of that discretion reviewable in some coherent fashion.

building could be put in the event the proposed use would not be successful.

"6. That residents in the neighborhood objected to the use being established in their neighborhood.

"7. That where entertainment is provided, it* has generated a heavy traffic and parking problem, causing a heavy surcharge of traffic on the immediate residential areas.

"8. That as a governmental body, the Council based on the substantial changes in the original concept as submitted by the Petitioner, has evidenced concern as to the ultimate use.

"9. That the Council acted on this matter, not as a transfer but in effect as a new license at a new location."[4]

The applicants' personal qualifications and financial ability to undertake this venture were not given as reasons for denial of their request. The third, fourth and sixth reasons embody the objections of the council, the chief of police and city manager[5] and certain residents as to the effect that the proposed business would have on the neighborhood. The most specific statement of that concern was that the business would have an "adverse effect on the peace, quiet and tranquility of the neighborhood". The seventh reason raises traffic and parking as an objection.

Although we fully appreciate the concern of local residents for the potential disruption of their neighborhood, under the circumstances of this case we do not consider the general objections raised as

_____

[4] The propriety of the council's consideration of plaintiffs' request as an original application has not been challenged on appeal. Regardless of the correctness of that perspective, the scope of review remains the same, *i.e.,* abuse of discretion. *See Bisco's, Inc v Liquor Control Comm,* 395 Mich 706; 238 NW2d 166 (1976), *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976).

[5] Like the trial court, we were unable to find any record evidence concerning the objections of those officials.

valid reason for refusing plaintiffs' request for transfer. Of the six persons originally signing the petition requesting that the council deny the license, three subsequently withdrew their objections. Moreover, plaintiffs produced a petition signed by 120 residents favoring granting the license. Finally, the area is apparently zoned so as to permit plaintiffs' business at the proposed location, and the nature of the objections were such as to apply to any class "C" liquor establishment rather than to the plaintiffs' business in particular.[6]

In this same vein we note that the defendant concedes that the proposal conforms with the pertinent ordinance governing the required amount of parking space.

Thus, in the instant case we have a proposal in full conformity with all pertinent zoning and traffic ordinances, and no evidence whatever of any unusual circumstance that would justify imposing heavier requirements on the plaintiffs than upon other similarly situated businesses.[7] We do not substitute our judgment for that of the council, but in the absence of evidence in the record which

---

[6] In this context we think the following quotation appropriate:

"The fact that a large number of the residents of the area protest the issuance of the permits is not in itself sufficient reason to deny the application of an otherwise qualified applicant. The question of whether the sale and purchase of alcohol should be permitted is a political one to be determined by the voters under the local option sections of the Liquor Control Act. * * * Furthermore, a city, by zoning ordinances, may restrict the sale of alcoholic beverages to certain areas within the city." *Texas Alcoholic Beverage Comm v Mikulenka,* 510 SW2d 616, 619 (Tex Civ App, 1974). (Citations omitted.)

[7] We do not mean that an applicant's compliance with pertinent ordinances precludes a local legislative body from considering factors within the ambit of such ordinances. However, there must be some circumstances warranting a departure from previously established legislative standards. The reasons need not be compelling but they certainly must be present.

would explain and justify the council's action we must concur with the trial court that the council acted arbitrarily in this case.[8]

The trial court is affirmed.

---

[8] As to the reasons given by the council to support their denial of plaintiffs' request for transfer, we make the following comments:

The gist of the first reason is not clear, but we assume that it concerns the fitness of the building to house plaintiffs' business. In view of the fact that plaintiffs obtained approval of the floor plan and site plan from the architect of the building, the city planning director and the city fire marshall, we find no support for the council's objection. The second and fifth reasons appear to us to be unrelated to the fitness of the building or the location of the business. The eighth reason which expresses the council's fears as to the possible ultimate use of the building because of "substantial changes" made by plaintiffs in the concept contained in their original application is also devoid of merit, since these "substantial changes" were made in response to the council's original objections.