STAFFORD'S RESTAURANT OF BLOOMFIELD, INCORPORATED
v WEST BLOOMFIELD TOWNSHIP BOARD

Docket Nos. 77-41, 77-2411. Submitted November 2, 1977, at Detroit.
—Decided April 17, 1978. Leave to appeal applied for.

Plaintiff, Stafford's Restaurant of Bloomfield, Incorporated, ap-
plied for a class C liquor license approval of which was denied
by the West Bloomfield Township Board because the area in
question was "saturated" with taverns and bars, and because
the board had a policy of allowing only "one license per mall".
Subsequently, the board approved an application for the trans-
fer of an existing class C license to the area and an application,
made prior to plaintiff's, for a new license at a bowling alley
located two-tenths of a mile from plaintiff. Again plaintiff
applied for a liquor license, and again it was denied for the
same reasons. Later, the board in review reaffirmed its denial.
Plaintiff sought a restraining order preventing the depletion of
the remaining available licenses and an order of superintend-
ing control requiring the defendants to approve the plaintiff's
application. The Oakland County Circuit Court, William John
Beer, J., found that the board had not complied with its own
procedure for granting licenses, ordered further proceedings by
the township, and denied injunctive relief. Plaintiff appealed by
leave granted. After further review by the township, plaintiff's
application was again denied, and the circuit court then dis-
missed plaintiff's complaint. Plaintiff appeals that judgment,
and the two appeals were consolidated, on the court's own
motion, for hearing and decision. *Held:*

1. The phrase "one license per mall" is impermissibly vague

REFERENCES FOR POINTS IN HEADNOTES

[1] 45 Am Jur 2d, Intoxicating Liquors § 78.
[2, 10] 45 Am Jur 2d, Intoxicating Liquors § 135.
[3, 7] 45 Am Jur 2d, Intoxicating Liquors § 425.
[4] 45 Am Jur 2d, Intoxicating Liquors §§ 119, 135, 174, 175.
  Grant or renewal of liquor license as affected by fact that applicant
  held such license in the past. 2 ALR2d 1239.
[5, 8] 45 Am Jur 2d, Intoxicating Liquors §§ 163, 164.
[6] 45 Am Jur 2d, Intoxicating Liquors § 26.
[9] 45 Am Jur 2d, Intoxicating Liquors § 182.
  Transfer of retail liquor license or permit from one location to
  another. 98 ALR2d 1123.

because what constitutes a mall is not defined, and further any claimed resolution under which it was applied was ineffective since it was not published according to law.

2. On remand, the township board should, if denial results, provide a statement of reasons for denial other than only "one license per mall", and should define a "saturated area".

3. The approval by the township board of a license transfer applied for by another party and the granting of a prior application for license to another party are inapplicable to the issue of the grant or denial of plaintiff's applications.

Reversed and remanded to the township board for further proceedings.

BEASLEY, P. J., dissents on the ground that the phrase "one license per mall" is not impermissibly vague, and that to require a governing body to publish in advance every reason and standard that may be used in denying an application for a liquor license improperly shifts the burden of proof to the governing body to justify a denial. The Administrative Procedures Act does not apply to township boards acting on new liquor license applications. Judicial review of denial of applications for new liquor licenses should be very narrow and limited to cases in which the applicant sustains the heavy burden of proof of unmistakable discrimination or arbitrary and capricious abuse of discretion. Applicants for new liquor licenses are entitled to a fair exercise of discretion by the township board and nothing more.

### OPINION OF THE COURT

1. INTOXICATING LIQUORS—LICENSES—LOCAL LEGISLATIVE BODIES—
   JUDICIAL REVIEW.

   The power of the local communities to control alcoholic beverage traffic is extremely broad, but does not permit local legislative bodies to act arbitrarily and capriciously, and when the local bodies conduct themselves in such a manner their actions are reviewable by the courts.

2. TOWNS—TOWNSHIP BOARD—INTOXICATING LIQUORS—LICENSES—LI-
   CENSE APPLICATIONS—VAGUENESS.

   A township board's unpublished policy for consideration of liquor license applications allowing only "one license per mall" is impermissibly vague since what constitutes a mall is not defined.

3. TOWNS—TOWNSHIP BOARD—INTOXICATING LIQUORS—LICENSES—
   LOCAL LEGISLATIVE BODIES—RESOLUTIONS—PUBLICATION.

   Failure to publish a resolution stating the policy of a township

board in considering liquor license applications renders the resolution ineffective since failure to publish as required by law fails to establish a prima facie case for the existence and validity of the resolution (MCLA 600.2116; MSA 27A.2116).

DISSENT BY BEASLEY, P. J.

4. INTOXICATING LIQUORS—LICENSES—NEW LICENSES—RENEWALS—LOCAL LEGISLATIVE BODIES—DISCRETION.

*The discretion vested in local governing bodies with respect to applications for new, class C, tavern licenses is broader than where a question of renewal or revocation is involved.*

5. INTOXICATING LIQUORS—LICENSES—LOCAL LEGISLATIVE BODIES—DISCRETION—JUDICIAL REVIEW—BURDEN OF PROOF.

*The widest and broadest discretion should be left to the local governing body where an applicant for a liquor license seeks approval of the local governing body, and judicial review of its decision should be very narrow and very limited; a heavy burden of proof should be on the applicant to show unmistakable discrimination or arbitrary and capricious abuse of discretion.*

6. ADMINISTRATIVE LAW—INTOXICATING LIQUORS—LICENSES—LOCAL LEGISLATIVE BODIES—ADMINISTRATIVE PROCEDURES ACT.

*The Administrative Procedures Act is inapplicable to a township board exercising its discretion in considering applications for new liquor licenses.*

7. STATUTES—EVIDENCE—PRIMA FACIE EVIDENCE—PUBLIC RECORDS—TOWNSHIPS—RESOLUTIONS—VALIDITY—STATUTORY CONSTRUCTION.

*A statute providing that a record or certified copy of a published resolution provides prima facie evidence of the existence and validity of the resolution is merely a rule of evidence simplifying admissibility into evidence of certain public records; it is not intended to and does not operate to switch the burden of proof of existence and validity of township resolutions to the township board (MCLA 600.2116; MSA 27A.2116).*

8. INTOXICATING LIQUORS—TOWNS—TOWNSHIP BOARDS—LICENSES—LOCAL LEGISLATIVE BODIES—DISCRETION.

*An applicant for a new liquor license is entitled to a fair exercise of discretion by a township board considering the application and nothing more.*

9. INTOXICATING LIQUORS—LICENSES—NEW LICENSES—RENEWALS—
ABUSE OF DISCRETION.

  The transfer of an existing liquor license to a new location is a
  different situation from the issuance of a new license, involving
  different statutory and other considerations; thus, approval of a
  transfer of a liquor license to a location near to the location of
  an applicant for a new license whose application is denied does
  not constitute arbitrary and capricious discrimination against
  the applicant.

10. INTOXICATING LIQUORS—TOWNS—TOWNSHIP BOARDS—LICENSES—
LOCAL LEGISLATIVE BODIES—POLICY—VAGUENESS.

  The policy of a township board in considering applications for
  new liquor licenses to allow only "one license per mall" is not
  impermissibly vague.

*Dennis G. Vatsis,* for plaintiff.

*Brennan & Bibeau, P. C.* (by *Teresa E. Schafer*),
for defendants.

Before: BEASLEY, P. J., and D. E. HOLBROOK, JR.
and M. J. KELLY, JJ.

M. J. KELLY, J. Two cases are consolidated for
this appeal.

Initially, plaintiff appeals by leave granted
(Docket No. 77-41) from a November 3, 1976, Oak-
land County Circuit Court order that defendants
refer plaintiff's application for a Class C liquor
license to the planning commission and police
department, and then to reconsider the applica-
tion. This Court on April 11, 1977, restrained
defendants from depleting the remaining quota of
available liquor licenses pending further order of
the Court.

Plaintiff also appeals from the trial court's final
order of June 9, 1977 (Docket #77-2411) dismiss-
ing plaintiff's complaint for superintending con-
trol. This Court ordered the cases (77-41 & 77-
2411) consolidated on July 7, 1977. The parties

raise no issues in case No. 77-2411 that were not raised in case No. 77-41.

On June 27, 1975, plaintiff applied to the Michigan Liquor Control Commission (MLCC) for a Class C liquor license to be used at its Orchard Mall location in West Bloomfield Township. This application was referred by the MLCC to the West Bloomfield Township Board for its consideration.

The board resolution outlining procedures for license determinations provides that the board shall refer all applications to the planning commission and the police department before reaching a decision. At trial, the township clerk testified that plaintiff's application had never been referred to the planning commission or to the police department. The attorney for the township, however, stipulated that the planning commission and the police department would not have objected to approval of the application. Local approval was ultimately denied.

The township clerk further testified that the basis for the decision was that there was already one establishment in the mall which had a liquor license. It was also the consensus of the seven board members that there were already too many licensed establishments in the area. She admitted that the "one license per mall" policy was not contained in the township resolution and that no study had been done to support the reasonableness of such a policy. According to the concise statement of facts, approval was denied because the area in and around the mall was "saturated" with taverns and bars. Only two establishments in the area had Class C licenses in June of 1975.

In June of 1976 the plaintiff reapplied, this time for a "tavern" license. Once again, the application was referred to the West Bloomfield Township

Board. On July 20, 1976, the chairman of the township liquor license committee informed the plaintiff that the "one license per mall" policy had not changed. The board was also concerned about the concentration of taverns and bars in any given area of the township and felt that the intersection where Orchard Mall is located "had reached the saturation point". Plaintiff's attorneys appeared before the township board on September 7, 1976. Their attempt to seek review of the denial resulted in a reaffirmation of the denial.

On May 2, 1977, the township adopted new "liquor establishment requirements" with regard to local approval of liquor licenses. On May 18, 1977, plaintiff's original application again came before the board after being referred to the planning commission and police department in compliance with the lower court order of November 3, 1976. The application was denied a second time.

After denying plaintiff's original application, the board approved the transfer of an existing Class C license to Bloomfield Charlie's which bordered Orchard Mall. Also approved after June of 1975 was the granting of a new license to a bowling alley south of the Maple-Orchard Lake intersection, plaintiff being north. The application for the bowling alley had been submitted in 1972.

On appeal plaintiff challenges the township board resolution, which provides that the board shall have unlimited discretion concerning the approval of a new liquor license, as unconstitutionally overbroad. Furthermore, plaintiff claims the township board acted arbitrarily and capriciously in disapproving its application.

The Michigan Supreme Court has stated:

"[T]he power of the local communities to control

alcoholic beverage traffic is extremely broad but does not permit local legislative bodies to act arbitrarily and capriciously and further, when the local bodies conduct themselves in such a manner their actions are reviewable by the courts."

*Bundo v Walled Lake,* 395 Mich 679, 700–701; 238 NW2d 154, 164 (1976). See MCLA 436.17; MSA 18.988. Plaintiff, however, must establish a showing of an abuse of discretion or an arbitrary exercise of power on the part of the township board. 395 Mich at 701.

The phrase "one license per mall" is impermissibly vague since what constitutes a mall is not defined. Furthermore, the township was required to publish the resolution under MCLA 42.8; MSA 5.46(8), and failed to do so. *Cf. Mallchok v Liquor Control Commission,* 72 Mich App 341; 249 NW2d 415 (1976). A record or certified copy of a published resolution would have provided "prima facie evidence of the existence and validity of such * * * resolution * * * ". MCLA 600.2116; MSA 27A.2116. Since the township has failed to publish as required by law, we hold it has failed to establish a prima facie case of the existence and validity of the resolution. The failure to publish renders the resolution ineffective.

The township denied the instant license relying on the resolution and also because the area had become "saturated". There is no evidence concerning what constitutes a saturated area. We, therefore, reverse and remand the case for further proceedings before the township board, and if denial results, for the board to provide a statement of reasons for denial of the license other than the "one license per mall" argument, and for a definition of "saturated area".

On remand, the board does not have to justify

further the two liquor licenses which were given to other establishments in the same area after plaintiff was denied a license. The license given to Bloomfield Charlie's, aside from not being within the same mall, was a transfer of an existing license, and, therefore, inapplicable to the instant issue.

Furthermore, the liquor license granted to the bowling alley, some distance away from the Orchard Mall, was applied for by the bowling alley prior to plaintiff's instant application. The granting of that license also has little bearing on this case.

Reversed and remanded. Costs to the prevailing party on remand.

D. E. Holbrook, Jr., J., concurred.

Beasley, P. J. *(dissenting)*. I respectfully dissent.

Plaintiff seeks approval by defendant township of an application for a new, Class C liquor license, claiming compliance with the township's requirements.

Plaintiff says that in denying the application, defendant discriminated against plaintiff and treated plaintiff unfairly because defendant granted liquor licenses to others in the same area.

The Michigan Liquor Control Act, enacted in 1933 shortly after enactment of the Twenty-first Amendment to the U. S. Constitution which repealed national Prohibition, the Eighteenth Amendment, prohibits the sale and delivery of alcoholic liquor within the state, except by the Liquor Control Commission and its authorized licensees. MCLA 436.3; MSA 18.973. These statutes provide for special treatment of the liquor business and authorize local government units to limit

greatly the number of outlets selling liquor by the glass.[1]

Section 17 of the statute authorizes the liquor commission to issue Class C liquor licenses *in its discretion.* MCLA 436.17; MSA 18.988. Provision for local control is made in the following language:

"All applications for licenses to sell beer and wine or spirits for consumption on the premises, except in counties of 1,000,000 population or over, shall be approved by the local legislative body in which said applicant's place of business is located before being granted a license by the commission."

The statute has recently been interpreted in a license *renewal* case to give local authorities "a great deal of control" over the sale of alcoholic beverages in their community. *Bundo v Walled Lake,* 395 Mich 679, 687; 238 NW2d 154, 157 (1976). In fact, *Bundo* indicates there is a substantial question whether procedural due process safeguards are available where a new license has not been acquired.[2]

In *Case v Liquor Control Commission,*[3] the Court said that no one has an inherent right to a liquor license. In *Fitzpatrick v Liquor Control Commission,*[4] the Court indicated selling intoxicating liquor at retail is not a natural right to pursue an ordinary calling. Thus, *Postal v Village of Grosse Pointe,*[5] cited by plaintiff providing for licensing of restaurants, but not relating to liquor, is not appli-

---

[1] In fact, under some circumstances, a local governing unit may, by referendum, prohibit selling of liquor by the glass. MCLA 436.56; MSA 18.1027; MCLA 91.1; MSA 5.1740; MCLA 67.1; MSA 5.1285; 1963 Const, Art. 4, § 40.

[2] *Bundo v Walled Lake, supra,* p 685, fn 6.

[3] 314 Mich 632, 643; 23 NW2d 109 (1946).

[4] 316 Mich 83; 25 NW2d 118 (1946).

[5] 239 Mich 286; 214 NW 148 (1927).

cable nor controlling here for the reason that the liquor business is, as a matter of statutory policy, treated differently than other businesses.

In *Bundo,* the Court said:

"The procedure for obtaining a new license and that for renewing an existing license are quite different. Under § 17 every application for a new license must gain the approval of the local legislative body before the Liquor Control Commission may issue a license."[6]

The discretion vested in local governing bodies with respect to applications for new, Class C, tavern licenses is clearly broader than where a question of renewal or revocation is involved.[7]

Under *Hanson v Romeo Village Council,*[8] the Court held that the statute vests in the local legislative body full power and discretion with respect to approval of liquor licenses and that it is not reviewable even if a court might believe its exercise by the local legislative body to be in an arbitrary and capricious manner. If we were to follow *Hanson* literally, plaintiff's suit would necessarily fail. However, while *Hanson* has not been expressly overruled, there is language in *Bundo* and in *Bisco's, Inc v Liquor Control Commission,*[9] that suggests that with respect to renewal of liquor licenses an "extremely narrow" judicial review is available.

There is an inherent inconsistency in requiring a governing body to declare in advance in writing every reason and every standard that may be used in *denying* an application for a new license. Such an approach appears to turn the burden of proof

---

6 *Bundo v Walled Lake, supra,* p 693.

7 *See, Jones v City of Troy,* 405 F Supp 464 (1975).

8 339 Mich 612, 615; 64 NW2d 570 (1954).

9 395 Mich 706; 238 NW2d 166 (1976).

around so as to require the governing body to justify a denial. The number of liquor licenses in an area is a legislative decision, wisely entrusted to local control by the Legislature. It is definitely not a matter for a court to substitute its judgment for the elected legislators under the guise of applying constitutional due process or constitutional equal protection.

Where a particular applicant for a liquor license seeks approval of a local governing body, the widest and the broadest discretion should be left the local governing body. To require declaring and publishing a standard in advance is obviously to suggest that there is a judicial review on the merits. While I would not be prepared to say that there is no possible abuse of discretion great enough to require judicial intervention, I would keep judicial review very narrow and very limited; there is no assurance that the judiciary does a better job in making administrative decisions of this nature.

Assuming that, with respect to issuance of a new license, there may possibly be an "extremely narrow" judicial review available, I would hold that a very heavy burden of proof was upon the applicant to show an unmistakable discrimination or an arbitrary and capricious abuse of discretion in denying a new license.

In this case, plaintiff claims that defendant township must establish and publish standards governing denial of an application for a new license. Plaintiff cites *Mallchok v Liquor Control Commission*[10] in support of its position.

In *Mallchok,* this Court found that the Liquor Control Commission had failed to adopt formal rules and regulations in compliance with the Ad-

---

[10] 72 Mich App 341; 249 NW2d 415 (1976).

ministrative Procedures Act. Since the reason for denial of a specially designated distributor (SSD) license (sale of packaged liquor for consumption off the licensee's premises) was application of the so-called half-mile regulation and, since the regulation had not been published, this Court remanded the application to the Liquor Control Commission for re-evaluation under the rules existing at the time of the final order of denial. Also, this Court chose to find that under the special circumstances of that case, "absent rules or regulations constituting grounds for denial", the Liquor Control Commission should grant that plaintiff a license.

In this case, no claim is made that the Administrative Procedures Act applies to an elected township board in exercising its statutory discretion relative to approval or disapproval of an application for a new, Class C liquor license. Applying the Administrative Procedures Act to the appointed Liquor Control Commission is quite a different matter involving different considerations than where a locally elected township board is involved. Consequently, I would conclude that, by its express terms, the Administrative Procedures Act is inapplicable to a township board exercising this discretion,[11] and, thus, *Mallchok* is not precedent here.

The majority say that if, pursuant to MCLA 600.2116; MSA 27A.2116, defendant township had published a resolution adopting a "one liquor license per mall" policy, then a prima facie case for its existence and validity would be established. The majority also assert that, under MCLA 42.8; MSA 5.46(8), defendant township was required to publish the resolution and failed to do so.

---

[11] MCLA 24.203(2); MSA 3.560(103)(2) states as follows:

" 'Agency' means * * * It does not include an agency in the legislative or judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission."

I would not agree. MCLA 42.8 merely requires publication of proceedings of a township board. It may be that here defendant township board did not make its policy a matter of record until this case. That does not necessarily invalidate the policy. MCLA 600.2116; MSA 27A.2116 is merely a rule of evidence simplifying admissibility into evidence of certain public records; it is not intended to and does not operate to switch plaintiff's burden of proof.

In this case, plaintiff did not have a "right" to a liquor license. Plaintiff was entitled to a fair exercise of discretion by defendant township board with respect to plaintiff's application and nothing more. Defendant has denied plaintiff's request and given reasons.

Plaintiff claims that approval by defendant of two other tavern license applications constituted unfair discrimination against plaintiff, apparently on a theory that, chronologically, plaintiff's application was made first and that plaintiff is equally qualified or entitled to a license. Plaintiff does not contest the fact that there was already one establishment in the Orchard Mall which had a liquor license.

The record indicates that an establishment, known as Bloomfield Charlie's, obtained an approval of a transfer of a license to a location near to, but outside of, the subject mall and that some distance away, a license was approved in a bowling alley. The issuance of these licenses, even if after application by plaintiff in this case, does not constitute an abuse of discretion by defendant.

The transfer of an existing license to a new location is a different situation involving different statutory and other considerations than issuance of a new license. Thus, on this record, approval of

a transfer of license for Bloomfield Charlie's was not an arbitrary and capricious discrimination against plaintiff. The issuance of a new license in the bowling alley was approximately two-tenths of a mile away and, in fact, seems to have been applied for previous to the subject application.

I would find plaintiff has not met its burden of proving defendant discriminated against plaintiff and acted in an arbitrary and capricious manner.

Lastly, applied to this case, I do not believe the policy of "one license per mall" is impermissibly vague. I have no difficulty in recognizing Orchard Mall as a mall under the commonly accepted dictionary definitions.[12] There may well be cases where it will be difficult to determine whether a particular shopping center is a mall or not, but this is not such a case. In fact, on appeal, plaintiff's brief raises no issue of vagueness or uncertainty of treatment. Difficulty in determining the boundaries of a policy is nothing new in the law, but it is not a basis for invalidating a policy otherwise lawfully promulgated.

I would affirm.

---

[12] Mall: "a street for pedestrians only, with shops on each side and often with decorative plantings, benches, etc.; a completely enclosed, air-conditioned shopping center like this." Webster's New World Dictionary, Second College Edition, 1974.

Mall: "an open or covered passageway or concourse providing access to rows of stores and closed permanently or at stated times to motor vehicles; also: a complex of shops with associated passageways and parking space." Webster's New Collegiate Dictionary, 1974.