FULLER CENTRAL PARK PROPERTIES v CITY OF
BIRMINGHAM

CLANCY MULDOON'S, INC v CITY OF BIRMINGHAM

Docket Nos. 44179, 44227. Submitted February 14, 1980, at Detroit.—
Decided May 19, 1980.

Fuller Central Park Properties and Clancy Muldoon's Inc., here-
inafter plaintiffs, brought separate actions seeking writs of
superintending control against the City of Birmingham and the
Birmingham City Commission, hereinafter defendants, after
defendants denied approval of plaintiffs' applications for liquor
licenses to sell beer or wine and spirits for consumption on the
premises of their respective businesses. Defendants counter-
claimed in each action for a declaratory judgment determining
that the defendants had no obligation to approve the maximum
number of licenses authorized by law, even though qualified
applicants were seeking licenses.

The cases were consolidated and in one opinion but separate
judgments the Oakland Circuit Court, James S. Thorburn and
Robert B. Webster, JJ., granted defendants summary judg-
ments denying relief on plaintiffs' complaints for superintend-
ing control and granting declaratory judgments on the counter-
claims to the effect that the City of Birmingham was not
obligated to approve issuance of licenses up to the maximum
authorized by state law. Plaintiffs appeal. *Held:*

1. A municipality is precluded from enacting an ordinance or
resolution if: (1) it is in direct conflict with a state statutory
scheme; or (2) if the state statutory scheme preempts the
ordinance by occupying the field of regulation which the munic-
ipality seeks to enter even where there is no direct conflict
between the two schemes of regulation.

2. The Michigan Liquor Control Act does not mandate the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 374, 375.

[2] 45 Am Jur 2d, Intoxicating Liquors § 27.

[4, 5, 7] 45 Am Jur 2d, Intoxicating Liquors §§ 119, 134, 135.

[6] 16A Am Jur 2d, Constitutional Law § 735 *et seq.*

issuance of available liquor licenses for selling beer and wine or spirits for consumption on the premises to otherwise qualified applicants in any municipality.

3. There are four factors to consider in determining whether a state statute has preempted an ordinance of a city by occupying the field of regulation which the municipality seeks to enter: (1) if the state law expressly provides that the state's power to regulate in a specific area is exclusive, a municipal regulation is preempted; (2) preemption may be implied from the legislative history of the statute; (3) the pervasiveness of the state statutory scheme may indicate preemption; and (4) the nature of the regulated subject matter may demand exclusive state regulation to achieve uniformity.

4. The State of Michigan has not preempted the field of regulation for the approval for liquor licenses to sell beer and wine or spirits for consumption on the premises.

5. A city commission's refusal to approve the issuance of a liquor license for selling beer and wine or spirits for consumption on the premises based on the city's best interest does not constitute an abuse of discretion where a petitioner fails to show public need or convenience.

6. The right to equal protection of the law is not denied by a state law or course of procedure where the same law or course of procedure would have been applied to any other person in the same state under similar circumstances and conditions.

Affirmed.

D. C. RILEY, J., dissented. She would hold that a city may validly restrict the approval of the number of liquor licenses for selling beer and wine or spirits for consumption on the premises; however, the rationing procedure should be fair and equitable, capable of explanation and understanding, and determined and announced in advance of its being instituted. She would reverse and remand to the trial court for an order compelling approval of the issuance of the disputed licenses.

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS — ORDINANCES — STATE STATUTES — PREEMPTION.

A municipality is precluded from enacting an ordinance or adopting a resolution if: (1) it is in direct conflict with a state statutory scheme; or (2) if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, even where there is no direct conflict between the two schemes of regulation.

2. LICENSES — LIQUOR CONTROL — MUNICIPAL CORPORATIONS.

The Michigan Liquor Control Act does not require issuance of available liquor licenses for selling beer and wine or spirits for consumption on the premises to otherwise qualified applicants in any municipality.

3. STATE — MUNICIPAL ORDINANCES — PREEMPTION.

There are four factors to be considered in determining whether a state statute has preempted the ordinance of a city by occupying the field of regulation which the municipality seeks to enter: (1) if the state law expressly provides that the state's power to regulate in a specific area is exclusive, a municipal regulation is preempted; (2) preemption may be implied from the legislative history of the statute; (3) the pervasiveness of the state statutory scheme may indicate preemption; and (4) the nature of the regulated subject matter may demand exclusive state regulation to achieve uniformity.

4. STATE — LIQUOR REGULATION — MUNICIPAL CORPORATIONS — PREEMPTION.

The State of Michigan has not preempted the right of a municipality to limit the number of liquor licenses to sell beer and wine or spirits for consumption on the premises which it approves to fewer licenses than the maximum which a state statute may permit.

5. MUNICIPAL CORPORATIONS — CITIES — LIQUOR LICENSES — ABUSE OF DISCRETION.

A city commission's refusal to approve the issuance of a liquor license for selling beer and wine or spirits for consumption on the premises based on "the city's best interest" does not constitute an abuse of discretion where a petitioner fails to show public need or convenience.

6. CONSTITUTIONAL LAW — EQUAL PROTECTION.

The right to equal protection of the law is not denied by a state law or course of procedure where the same law or course of procedure would have been applied to any other person in the same state under similar circumstances and conditions.

DISSENT BY D. C. RILEY, J.

7. MUNICIPAL CORPORATIONS — LICENSES — LIQUOR — MUNICIPAL RESTRICTIONS — ADVANCE NOTICE.

*A city may validly restrict the number of liquor licenses it approves for issuance for the selling of beer and wine or spirits for consumption on the premises; however, the rationing proce-*

*dure should be fair and equitable, capable of explanation and understanding, and determined and announced in advance of its being instituted.*

*August, Thompson, Sherr, Clarke & Shafer, P.C.* (by *Alan R. Miller),* for plaintiff Fuller Central Park Properties.

*Simpson, Moran & Burnett* (by *James A. Simpson* and *C. Denton Wolf),* for plaintiff Clancy Muldoon's Inc.

*Beier, Howlett, McConnell, Googasian & McCann,* for defendants City of Birmingham and Birmingham City Commissioners.

Before: Bronson, P.J., and Beasley and D. C. Riley, JJ.

Beasley, J. Plaintiffs, each seeking to compel municipal approval for issuance of a liquor license by the Michigan Liquor Control Commission (hereinafter referred to as MLCC) brought separate actions against defendants for orders of superintending control after defendants denied approval of their applications. Defendants counter-claimed in each action for a declaratory judgment determining that the city commission had no obligation to approve the maximum number of licenses authorized by law, even though qualified applicants were seeking licenses. The cases were consolidated and, after remand to defendant commission to supplement the record regarding reasons for denial, the two trial judges to whom the cases were assigned joined together in one opinion denying plaintiffs the relief they sought.

Summary judgments were granted defendants, denying relief on the complaints for superintend-

ing control and granting declaratory judgments on the counter-claims, which hold that the statute does not require defendant city commission to approve the maximum number of licenses permitted under the statute. Plaintiffs now appeal as a matter of right.

In a referendum held on November 7, 1972, Birmingham voters approved the sale of liquor by the glass for consumption on the premises. Prior to the referendum, neither the legislative body (city commission) nor the electorate of the City of Birmingham had availed itself of the post-prohibition statutes which would have permitted sale of liquor by the glass for consumption on the premises within the city. On the contrary, both the city commission and the electorate had declined to take that legal step.

Under the quota provisions of MCL 436.19c; MSA 18.990(3), a total of 17 Class C liquor licenses are available for issuance in the City of Birmingham. Ten of the 17 available licenses have either been issued by the MLCC or approved by defendant city for issuance, 2 of the 10 such licenses being not currently operational.

Thus, there remain 7 licenses of the maximum of 17 still unissued and available. Each plaintiff-appellant has applied for one of the 7 unissued Class C licenses. For purposes of this appeal, no question has been raised as to the qualifications of each individual plaintiff as a licensee, nor with respect to the sites proposed for their respective establishments; that is, they are in locations which would meet defendant city's code requirements regarding use.

Prior to the 1972 referendum, on October 23, 1972, defendant city adopted a resolution setting forth its policy regarding liquor licenses, if the

referendum would pass.[1] Subsequently, on October
30, 1978, defendant city adopted a further resolu-
tion indicating that it had decided, after review,
that the best interest of the City of Birmingham
and its citizens would be to decline the issuance of
any further liquor licenses at that time.[2] It is the

[1] The resolution stated as follows:

"WHEREAS, the electors of the City of Birmingham will, as the
result of a petition filed with the City Clerk, vote on November 7,
1972, on the question of whether the sale of alcoholic beverages for
consumption on the premises shall be permitted with the City, and

"WHEREAS, citizens have expressed their concern as to the power
of the City, through its City Commission, to regulate and control the
licensing and operation of establishments for the sale and consump-
tion on the premises of liquor, and

"WHEREAS, the Commission deems it desirable to advise the
electors as to what the City's authority and policy is with regard to
regulating and controlling such establishments.

"NOW, THEREFORE, BE IT RESOLVED that the electors of the
City of Birmingham be advised by this Commission as follows:

"1. If sale of liquor for consumption on the premises is approved by
the voters, under present state law, no license for the sale of liquor
for consumption on the premises within the City may be issued by the
State Liquor Control Commission unless first approved by this Com-
mission.

"2. This Commission has the authority to impose limitations and
regulations which will permit the number of such establishments
within the City, control their location, the type of establishment
which may be licensed, and the physical facilities to be used. Each
license must be renewed each year and the Commission has the same
controls over renewals as it has over the original issuance of licenses.

"3. This Commission is unalterably opposed to permitting any
license to be issued to permit such an establishment in a residential
zone or in any area presently zoned B-1—Neighborhood Business.

"4. This Commission is unalterably opposed to approve the licensing
of any such establishments unless it is a restaurant with complete
dining facilities and it derives the major portion of its income from
the sale of food."

[2] The resolution stated as follows:

"WHEREAS, the Birmingham City Commission has reviewed the
following liquor license applications:

Monahan's Beef Buffet
Pheonicia Restaurant
P. J. Clarke's
Central Park Properties (Les Collisse)
Clancy Muldoon's (Studio 4)

"WHEREAS, the Birmingham City Commission may elect to issue a
liquor license to the most qualified applicant, above all others, on file
at time of said hearing, and

October 30, 1978, resolution that gives rise to the within litigation.

Plaintiffs first argue that the Birmingham City Commission does not have the power to limit the number of liquor licenses which will be issued *below* the maximum number allowed by statute. Plaintiffs reason that the Legislature has pre-empted this field of regulation. We do not agree.

The Michigan Constitution provides that municipalities have the power to adopt resolutions and ordinances relating to their municipal concerns "subject to the constitution and law".[3] A municipality is precluded from enacting an ordinance (or adopting a resolution) if (1) it is in direct conflict with a state statutory scheme or (2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, even where there is no direct conflict between the two schemes of regulation.[4]

Initially, we conclude that there is no direct conflict between the Birmingham resolution and the Michigan Liquor Control Act.[5]

The pertinent section of the act, which plaintiffs allege is in direct conflict with defendant commission's resolution, is as follows:

"(1) A public license shall not be granted for the sale of alcoholic liquor for consumption on the premises in

---

"WHEREAS, there exist two licenses which are not in operation at this time, and the full effect of these licenses on the community is not know. *[sic]*

"NOW, THEREFORE, BE IT RESOLVED that the Birmingham City Commission, having reviewed the above applications, deems it in the best interest of the City of Birmingham and its citizens to decline the issuance of any liquor license at this time."

[3] Const 1963, art 7, § 22.

[4] *People v Llewellyn,* 401 Mich 314, 322; 257 NW2d 902 (1977).

[5] MCL 436.1 *et seq.;* MSA 18.971 *et seq.*

excess of 1 license for each 1,500 of population or major fraction thereof."[6]

Plaintiffs reason that this statute provides, as applied to the City of Birmingham, that 17 liquor licenses *must* be issued. Plaintiffs argue that since there were seven licenses still unissued and available at the time defendant passed its resolution refusing to grant any more licenses, that resolution was in direct conflict with the statute.

If we were to adopt plaintiffs' reasoning, we would have to find that MCL 436.19c; MSA 18.990(3) places a *minimum* as well as a *maximum* limit on the number of liquor licenses which can issue in each municipality. This we decline to do.

The primary rule of statutory construction is that the Legislature is presumed to have intended the plain meaning of the words used by it.[7] In interpreting statutes, all words and phrases should be construed according to the common and approved usage of the language.[8] Correct and proper interpretation means giving effect to every word of the statute. Every effort must be made to avoid declaring any portion of the Legislature's language to be surplusage.[9] The definition for the phrase "in excess of" in Webster's New Collegiate Dictionary (2nd College Edition, 1974) is "more than".

If we accepted plaintiffs' argument that this statute places both a ceiling on and a floor under the number of liquor licenses to be issued in each community, it would result in a finding that "not"

---

[6] MCL 436.19c; MSA 18.990(3).

[7] *Florentine Ristorante, Inc v City of Grandville,* 88 Mich App 614; 278 NW2d 694 (1979), *Gordon Grossman Building Co v Elliott,* 382 Mich 596; 171 NW2d 441 (1969).

[8] MCL 8.3a; MSA 2.212(1); *Bragg v Kalamazoo,* 86 Mich App 700; 273 NW2d 530 (1978).

[9] *Deshler v Grigg,* 90 Mich App 49; 282 NW2d 237 (1979), *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971).

and "in excess of" are pure surplusage. Clearly, this was not the intent of the Legislature.[10]

Accordingly, we conclude that the Birmingham commission's resolution, which in effect limits the number of Class C liquor licenses, is not in direct conflict with the Michigan Liquor Control Act.

The question then becomes whether the state statute has pre-empted the city's ordinance by occupying the field of regulation which the municipality seeks to enter.[11] To determine if pre-emption has occurred, we must look at four factors.

First, if the state law expressly provides that the state's power to regulate in a specific area is exclusive, a municipal regulation is pre-empted. Second, pre-emption may be implied from the legislative history of the statute. Third, the pervasiveness of the state statutory scheme may indicate pre-emption. Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve uniformity.[12]

Applying these four factors to the case at hand, we find that the state has not pre-empted the field of regulation which the City of Birmingham seeks to regulate.

First, we find that the Legislature has not expressly provided that the state's power to regulate in this area is exclusive. MCL 436.1; MSA 18.971 provides, in part, as follows:

"*Except as by this act otherwise provided,* the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the state of Michigan, including the manufacture, importation, possession, transportation and sale thereof." (Emphasis added.)

---

[10] See, *Smock v Coots,* 165 Ind App 474; 333 NE2d 119 (1975).

[11] See, *People v Llewellyn, supra.*

[12] *Id.*

This section clearly indicates that there are some exceptions to the control of the MLCC, those specified in the statute. Specifically, MCL 436.17; MSA 18.988 provides as follows:

"Applications for licenses to sell beer and wine or spirits for consumption on the premises, except in a city of 1,000,000 population or over, *shall be approved by the local legislative body in which the applicant's place of business is located* before being granted a license by the commission, \* \* \*." (Emphasis added.)

Accordingly, although the MLCC is granted broad power in issuing licenses, that power is subject to the requirement that certain cities (Birmingham included) approve licenses before they may issue. We find that the Legislature has not expressly provided that the power of MLCC to regulate in the area of issuance of liquor licenses is exclusive. Rather, cities of under 1,000,000 population are specifically given the power to approve applications for licenses.[13]

Further indication that the power to regulate vested in the MLCC by the Legislature is *not* exclusive is the fact that after repeal of prohibition, home rule cities, like Birmingham, retained the power to prohibit sale of liquor by the glass within their boundaries. The effect of that right was to give the city the power to deprive the MLCC of power to issue *any* license for sale of liquor by the glass for consumption on the premises within the city's boundaries.

[13] We distinguish *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935). In that case, the Court held that the City of Saginaw could not fix the closing hours of places licensed to sell liquor to a period shorter than that specified by the Michigan Liquor Control Commission. The Court found that the commission was granted the exclusive power to regulate and control alcohol beverage traffic subject only to specified statutory exclusions, and that no statutory exclusion was applicable.

Second, the legislative history of this statute may properly be understood only within the context of the full history of the effort in this state and in the nation to control the liquor traffic. For our purpose here, we need only remember that in Michigan liquor is and always has been treated specially and quite differently from other products. Going back as far as 1850, Michigan Constitutions have contained provisions dealing with intoxicating liquor. In 1933, after repeal of the National Prohibition Amendment (XVIIIth), the Michigan Constitution was amended to permit the licensing of persons to sell alcoholic beverages. As amended in 1978, Article 4, § 40 of the 1963 Michigan Constitution provides as follows:

"The legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same."

We do not interpret this constitutional provision or the legislative history as showing an intent that the state pre-empt regulation in this phase of the liquor business. Moreover, although the liquor act is pervasive and deals with multiple facets of liquor control, there is no indication that the Legislature intended to pre-empt city action adopting a policy of approving fewer licenses than the maximum number permitted by statute. Rather, the Legislature specifically provided that the cities with populations less than a million have author-

ity to approve license applications as a condition precedent to their issuance by the MLCC.

Lastly, we find that the nature of the regulated subject matter does not demand exclusive state regulation to achieve uniformity. We note that the Legislature has set the absolute maximum number of licenses which can be issued in a city the size of Birmingham at 17. While, in the name of uniformity, the Legislature may see fit to set a maximum number of such licenses which a city cannot exceed, there is no good reason why a city cannot choose to establish a lower, temporary-maximum number.

Therefore, we conclude that the City of Birmingham's resolution limiting the number of liquor licenses to be issued at the present time is neither in direct conflict with the Michigan Liquor Control Act, nor pre-empted by the Legislature.

The question then becomes whether the City of Birmingham's action in limiting the number of licenses was arbitrary and capricious. We find that it was not.

In this connection, we note that defendants argue that the courts may not review the city commission's denial of plaintiffs' applications for *new* liquor licenses. While we would tend to believe that the scope of judicial review of a denial of an application for a new liquor license is very narrow and limited,[14] that question is not properly before this Court for review.[15] Moreover, our decision in this case makes its discussion unnecessary.

Although home rule cities, like Birmingham,

[14] See, *Stafford's Restaurant of Bloomfield, Inc v West Bloomfield Twp Board,* 82 Mich App 607; 267 NW2d 461 (1978), BEASLEY, J. dissenting.

[15] We note that the trial court held the city commission's actions reviewable, and defendants have not taken an appeal from that decision.

enjoy some power to control alcoholic beverage traffic, they cannot act arbitrarily and capriciously. The burden is on plaintiffs, however, to establish a showing of an abuse of discretion, or an arbitrary exercise of power on the part of the city commission.[16] Plaintiffs have failed to show such an abuse of discretion or arbitrary exercise of power by defendant commission in this case. Defendant commission denied plaintiffs' applications for liquor licenses on the ground that they believed it was in the city's best interest that no new licenses currently issue and that plaintiffs had failed to establish the "public need or convenience" for such licenses to issue. We find no indication that adoption of this resolution was an abuse of discretion. This is a proper ground for the denial of such a license.[17]

Plaintiff, Clancy Muldoon's, Inc., argues that the denial of its application, while other licensees are permitted to operate in the city, constitutes a denial of equal protection.[18] This argument is without merit.

The right to equal protection of the law is not denied by a state law or course of procedure where the same law or course of procedure would have been applied to any other person in the same state under similar circumstances and conditions.[19]

In this case, plaintiff was treated identically with other liquor license applicants in similar circumstances. All were denied a license due to the decision of the city commission that the best inter-

[16] *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976), *Stafford's Restaurant of Bloomfield, Inc v West Bloomfield Twp Board*, supra.

[17] See, *Smock v Coots, supra, Hobday v O'Dowd*, 94 RI 172; 179 A2d 319 (1962).

[18] US Const, Am XIV; Const 1963, art 1, § 2.

[19] *Moore v Spangler*, 401 Mich 360; 258 NW2d 34 (1977).

est of the city would be served by not issuing any more liquor licenses at this time.

The balance of plaintiff's claims are similarly without merit.

In summary, we find that the trial court's judgment denying plaintiffs' application for a writ of superintending control was proper. There was no clear legal duty requiring defendant Birmingham City Commission to approve plaintiffs' applications for liquor licenses in this case.

Affirmed.

BRONSON, P.J., concurred.

D. C. RILEY, J. *(dissenting).* I am in accord with the majority in their determination that the City of Birmingham may limit the number of liquor licenses to be issued, and that in so doing their resolution is not in conflict with the Michigan Liquor Control Act, nor preempted by the Legislature.

The right to ration such licenses carries with it the obligation, however, to do so in a manner that is neither arbitrary nor capricious. The rationing procedure should be fair and equitable, capable of explanation and understanding, and most of all, determined and announced in advance of its being instituted.

The city's denial of the two applications before us was arbitrary and capricious, for the reason that these applications were pending *prior* to the city's adoption of their limit. Again, basic fairness requires that notice be given of any limitation established. This was not done here. Therefore, the city cannot reject these applicants at the same hearing at which it announces the limitation on the basis of the limit set. Rather, they must treat

these applicants as they had all others who pre-
ceded their limitation and give valid reasons for
disqualification.[1]

Inasmuch as it is stipulated that the two appli-
cants herein involved were otherwise qualified and
would have been issued licenses but for the dis-
qualifying limitation which I find to have been
arbitrarily imposed, I would reverse and remand
to the trial court for an order compelling approval
of the issuance of the disputed licenses.

---

[1] It is worthy to note that one of the applicants before us was
rejected in April, 1978, because they did not have a full-service
restaurant. They reapplied as such a restaurant in September, 1978,
only to be rejected on October 30, 1978, because of the limit set
coincident with the hearing.