STAFFORD'S RESTAURANT, INC v CITY OF OAK PARK

Docket No. 63881. Submitted December 20, 1982, at Detroit.—Decided
    September 26, 1983. Leave to appeal applied for.

In 1966, the city council of the City of Oak Park adopted the
    policy that it would "refrain from consideration of requests for
    approval of licenses to permit the sale of spirits of any kind
    whatsoever, including beer and wine, for consumption on the
    premises within the City of Oak Park". The city council has
    consistently applied that policy since 1966. Stafford's Restau-
    rant, Inc., filed an application for a Class A tavern license
    which would permit the sale of beer and wine on the premises.
    The Liquor Control Commission forwarded the application to
    the City of Oak Park. When the City of Oak Park took no
    action on the application, Stafford's Restaurant, Inc., filed a
    complaint for mandamus in Oakland Circuit Court, seeking an
    order to compel the City of Oak Park to approve the issuance of
    the license. Named as defendants were the city and the individ-
    ual members of the city council. Defendants moved for sum-
    mary judgment. Gene Schnelz, J., granted defendants' motion
    for summary judgment. Plaintiff appeals. *Held:*

    1. There is no direct conflict between the provisions of the
    Michigan Liquor Control Act and the policy adopted by the city
    council. Indeed, the state statutory scheme specifically provides
    for approval of liquor licenses by the municipality in which the
    licensed establishment would be located.

    2. The state through its statutory scheme of regulation has
    not pre-empted the right of a municipality to limit the number
    of liquor licenses for the sale of intoxicating beverages for
    consumption on the premises to fewer than the maximum
    permitted by the state statute.

    3. The action of the City of Oak Park in refusing to consider

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 374, 375.

[2, 4-6] 45 Am Jur 2d, Intoxicating Liquor § 119.

[6] 45 Am Jur 2d, Intoxicating Liquor § 161.

plaintiff's application for a Class A liquor license was not arbitrary and capricious.

Affirmed.

1. MUNICIPAL CORPORATIONS — ORDINANCES — STATUTES — PRE-EMPTION.

A municipality is precluded from enacting an ordinance or adopting a resolution if: (1) it is in direct conflict with a state statutory scheme; or (2) the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, even where there is no direct conflict between the two schemes of regulation.

2. MUNICIPAL CORPORATIONS — LIQUOR REGULATION — MICHIGAN LIQUOR CONTROL ACT — PRE-EMPTION.

A resolution by a municipality to refrain from any consideration of requests for licenses to allow the consumption of intoxicating beverages on the premises of businesses located in the municipality is not in direct conflict with the state statutory scheme for regulating intoxicating liquors found in the Michigan Liquor Control Act, since the state statutory scheme neither specifically permits nor prohibits a municipality from taking such action (MCL 436.1 et seq.; MSA 18.971 et seq.).

3. MUNICIPAL CORPORATIONS — ORDINANCES — PRE-EMPTION.

There are four factors to be considered in determining whether a state statute has pre-empted the ordinance of a city by occupying the field of regulation which the municipality seeks to enter: (1) if the state law expressly provides that the state's power to regulate in a specific area is exclusive, a municipal regulation is pre-empted; (2) pre-emption may be implied from the legislative history of the statute; (3) the pervasiveness of the state statutory scheme may indicate pre-emption; and (4) the nature of the regulated subject matter may demand exclusive state regulation to achieve uniformity.

4. INTOXICATING LIQUORS — MUNICIPAL CORPORATIONS — COURTS.

Michigan courts have consistently recognized the importance of the local community in the regulation of alcoholic beverages.

5. STATE — LIQUOR REGULATION — MUNICIPAL CORPORATIONS — PRE-EMPTION.

The State of Michigan has not pre-empted the right of a municipality to limit the number of liquor licenses to sell beer and wine or spirits for consumption on the premises which it approves to fewer licenses than the maximum which a state statute may permit.

6. Intoxicating Liquors — Municipal Corporations — Liquor
    Licenses.
    The refusal of a municipal government to consider any applica-
    tions for the issuance of a license for the sale of beer and wine
    to be consumed on the premises does not constitute an abuse of
    discretion but is rather a proper exercise of the municipal
    government's discretionary authority.

*Dennis G. Vatgis,* for plaintiff.

*Shifman & Goodman, P.C.* (by *Philip J. Good-
man),* for defendants.

Before: V. J. Brennan, P.J., and M. J. Kelly
and J. M. Graves, Jr.,* JJ.

J. M. Graves, Jr., J. Plaintiff, Stafford's Restau-
rant, Inc., appeals as of right from an order of the
Oakland County Circuit Court granting defen-
dants' motion for summary judgment. Stafford's
filed a complaint for mandamus under GCR 1963,
714 to compel the City of Oak Park to approve the
issuance of a Class A tavern license, which would
permit plaintiff to sell beer and wine for consump-
tion on the premises. On November 21, 1966, the
Oak Park City Council, perceiving local public
opinion as being opposed to the sale of any kind of
intoxicating liquor for consumption on the prem-
ises within the city, published a resolution
whereby the city council would "refrain from any
consideration of requests for approval of licenses
to permit the sale of spirits of any kind whatso-
ever, including beer and wine, for consumption on
the premises within the City of Oak Park". The
city council has consistently applied this policy
since the 1966 resolution, and presently no estab-
lishment in the City of Oak Park is authorized to

* Circuit judge, sitting on the Court of Appeals by assignment.

serve beer and wine for consumption on the premises.

The Michigan Liquor Control Commission cannot issue a Class A license to Stafford's without approval of the Oak Park City Council. MCL 436.17(3); MSA 18.988(3) provides in pertinent part:

"Except as provided in section 17b, an application for a license to sell beer and wine or spirits for consumption on the premises, except in a city having a population of 1,000,000 or more, shall be approved by the local legislative body in which the applicant's place of business is located before being granted a license by the commission".

The trial court, in granting defendants' motion for summary judgment filed pursuant to GCR 1963, 117.2(3), held that a city council may effectuate community concern over sale of liquor by declining to approve any tavern licenses for the sale of beer and wine by the glass.

On appeal, plaintiff argues that defendants do not have the authority to refuse to consider applications for licenses to sell beer and wine for consumption on the premises. Plaintiff argues that, while defendants may issue less than the maximum number of liquor licenses authorized by statute, defendants' authority to prohibit all sales of beer and wine for consumption on the premises is pre-empted by the Michigan Constitution and the Michigan Liquor Control Act.

We find plaintiff's argument unconvincing. After consideration of Const 1963, art 4, § 40, the Michigan Liquor Control Act, MCL 436.1 *et seq.;* MSA 18.971 *et seq.,* and relevant case authority, we conclude that defendants may properly refuse to

approve any licenses for the sale of beer and wine for consumption on the premises within the city.

The analysis to be used in determining questions of pre-emption was set forth by the Supreme Court in *People v Llewellyn,* 401 Mich 314, 322; 257 NW2d 902 (1977). The Court stated that:

> "A municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme pre-empts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." (Footnotes omitted.)

Defendants' resolution, agreeing to refrain from consideration of requests for licenses to allow the consumption of liquor on the premises, is not in direct conflict with the provisions of the Michigan Liquor Control Act. The Michigan Liquor Control Act neither specifically permits nor prohibits a city from taking such action.

In determining whether an ordinance is preempted where there is no direct conflict with state law, the Court in *Llewellyn* set forth the following four guidelines:

> "First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935).
>
> "Second, the pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge,* 385 Mich 623; 189 NW2d 318 (1971).
>
> "Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co,* 330 Mich 694,

702; 48 NW2d 362 (1951); *In re Lane,* 58 Cal 2d 99; 22 Cal Rptr 857; 372 P2d 897 (1962); *Montgomery County Council v Montgomery Ass'n, Inc,* 274 Md 52; 325 A2d 112; 333 A2d 596 (1975). While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

"Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." (Footnotes omitted.) *Llewellyn, supra,* pp 323-324.

State law does not expressly provide that the state's authority to regulate this area is exclusive. Const 1963, art 4, § 40 provides:

"Except as prohibited by this section, the legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. The legislature may provide for an excise tax on such sales. Neither the legislature nor the commission may authorize the manufacture or sale of alcoholic beverages in any county in which a majority of the electors voting thereon shall prohibit the same."

The Michigan Liquor Control Act created the Liquor Control Commission (LCC) and sets forth the following delegation of power:

Except as by this act otherwise provided, the commission shall have the sole right, power and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within the state of Michigan, including the manufacture, importation, possession, transportation and sale thereof." MCL 436.1; MSA 18.971.

Both the constitution and the initial section of the Michigan Liquor Control Act grant broad author-

ity to the LCC but make the commission's authority subject to other portions of the act. Indeed, the aforementioned provision in MCL 436.17; MSA 18.988, which requires approval by the local legislative body before issuance of a license to sell beer and wine or spirits for consumption on the premises, constitutes an exception to the LCC's control. Thus, rather than providing for exclusive regulation by the LCC, the Michigan Liquor Control Act expressly delegates to the local legislative body of cities less than one million in population the right to approve an application for a liquor license before such may be granted by the commission. The law does not provide for exclusive regulation of the issuance of liquor licenses by the state.

Pre-emption may also be implied from an analysis of legislative history. *Llewellyn, supra.* We do not believe the legislative history of liquor regulation in Michigan supports a finding of pre-emption. While there has been a constitutional provision dealing with liquor regulation since 1850, state statutes and the interpretations of those statutes have consistently recognized the importance of the local community in the regulation of alcoholic beverages. See *Bundo v Walled Lake,* 395 Mich 679, 687; 238 NW2d 154 (1976); *Johnson v Liquor Control Comm,* 266 Mich 682, 685; 254 NW 557 (1934). In finding no indication in the legislative history of liquor license control that pre-emption by the state was intended in this area of regulation, we agree with the reasoning stated in *Fuller Central Park Properties v City of Birmingham,* 97 Mich App 517, 527-528; 296 NW2d 88 (1980):

"We do not interpret this constitutional provision [Const 1963, art 4, § 40] or the legislative history as showing an intent that the state pre-empt regulation in this phase of the liquor business. Moreover, although

the liquor act is pervasive and deals with multiple facets of liquor control, there is no indication that the Legislature intended to pre-empt city action adopting a policy of approving fewer licenses than the maximum number permitted by statute. Rather, the Legislature specifically provided that the cities with populations less than a million have authority to approve license applications as a condition precedent to their issuance by the MLCC."

The third quideline set forth in *Llewellyn* states that the pervasiveness of the regulatory scheme may be considered evidence of pre-emption. Unquestionably, the Michigan Liquor Control Act deals with many facets of the sale and consumption of alcoholic beverages. While the act is pervasive, the inclusion in MCL 436.17; MSA 18.988 of a provision requiring approval of a liquor license by the local legislative body convinces us that, in the area of liquor licenses, the state regulatory scheme was not intended to be all-pervasive.

The last guideline to be used in the determination of a pre-emption question relates to whether the nature of the regulated subject matter is such that necessary uniformity cannot be achieved without exclusive state regulation. We do not find that the issuance of liquor licenses for consumption on the premises requires strict uniformity. While the Legislature in MCL 436.19c; MSA 18.990(3) set a maximum on the number of licenses which may be issued, the statute contains no requirement that a minimum number of licenses be issued. See *Fuller Central Park Properties v City of Birmingham, supra.*

We conclude that defendants are not precluded from enacting a resolution providing that no licenses for the sale of liquor for consumption on the premises will be considered. We rely not only on

the pre-emption analysis above, but also on the long-standing recognition by this Court and the Supreme Court that a community has an important interest in regulating the sale of intoxicants within its jurisdictional boundaries. In *Johnson, supra,* p 685, the Supreme Court noted:

"The very nature of the liquor business is such that local communities, as a matter of policy, should be permitted to regulate the traffic within their own bounds in the proper exercise of their police powers, subject to the larger control of the liquor commission as to those matters wherein the commission is given exclusive powers by the legislature."

In *Scott v Arcada Twp Board,* 268 Mich 170, 173; 255 NW 752 (1934), the Supreme Court examined a fact situation similar to the present, the plaintiff in that case seeking a permit to sell beer and wine for consumption on the premises in his restaurant. The Court discussed the relevant constitutional provision and statute (which correspond to Const 1963, art 4, § 40 and MCL 436.17; MSA 18.988) and concluded:

"The legislature provided in no uncertain terms that plaintiff's application for a license must be approved by the defendant board. * * * The purpose of the provision undoubtedly was to permit each local municipality to determine whether beer and wine should be sold for consumption on the premises within its limits."

As recently as 1976, the Supreme Court has recognized that "the regulation of establishments selling alcoholic beverages is a special area and one in which the local community has been given a great deal of control". *Bundo, supra,* p 687.

Plaintiff here relies heavily upon this Court's decision in *Oppenhuizen v Zeeland,* 101 Mich App 40; 300 NW2d 445 (1980). We find that reliance to

be misplaced and discuss the case only for purposes of distinguishing the issue involved. In *Oppenhuizen,* this Court determined that the City of Zeeland could not completely prohibit the sale of liquor within the city. The Court found that the Zeeland ordinance was pre-empted because Const 1963, art 4, § 40 grants the power to a *county* to prohibit the sale or manufacture of liquor. The Court found that no legislative body within the county could do what the voters and the county at large had not authorized. We find *Oppenhuizen* distinguishable because the City of Zeeland sought to ban the sale of *all* liquor within the city, not merely beer and wine for consumption on the premises. *Oppenhuizen* presented a clear picture of pre-emption, whereas here the local legislative body by statute has the power to approve liquor licenses before they may be issued by the LCC. We find the holding in *Oppenhuizen* to be inapplicable to this case.

Plaintiff also argues that defendants' failure to consider plaintiff's license application is arbitrary and capricious because defendants are without authority to totally prohibit the sale of beer and wine for consumption on the premises. We find defendants' denial of plaintiff's application to be neither arbitrary nor capricious, as the action was a proper exercise of defendants' power to regulate the sale of alcoholic beverages for consumption on the premises. The city council adopted a policy based upon its perception of the desires of a majority of the electorate of the City of Oak Park. The city council and its individual members have since 1966 applied this policy in a consistent and nondiscriminatory manner so as to promote, pursuant to their determination as the people's elected representatives, the best interests of the city.

Affirmed.