WEBER v ORION TOWNSHIP

Docket No. 68465. Submitted October 18, 1983, at Detroit.—Decided August 20, 1984. Leave to appeal applied for.

Everett and Geraldine Weber own a 190-acre tract in Orion Township, Oakland County, on which they have operated a sand and gravel mining operation. On January 13, 1975, the Webers secured from the Department of Natural Resources (DNR) a license pursuant to the garbage and refuse disposal act to operate a solid waste disposal area on a 28-acre portion of that tract. The license had a September 1, 1975, expiration date. When Orion Township refused to issue a permit for the landfill pursuant to a township ordinance which dealt with both soil excavation and filling, the Webers commenced in Oakland Circuit Court an action for declaratory judgment, seeking to have the ordinance declared unconstitutional or, in the alternative, seeking an order declaring that they had complied with the provisions of the ordinance and were entitled to a permit to operate the landfill. Orion Township, the township building inspector and the township board (hereinafter the township) were named as defendants. The township, inspector and board moved for accelerated judgment on the basis of the Webers' failure to exhaust their administrative remedies. On December 2, 1975, the trial court, Robert L. Templin, J., granted the motion for accelerated judgment. The Webers appealed and the Court of Appeals reversed and remanded for a full trial on the merits of the Webers' claims. Docket No. 26707, released December 8, 1976, unreported per curiam opinion. On remand, the Webers amended their complaint to include a challenge to the new township ordinance which had replaced the soil removal and filling ordinance which had been in effect at the time the original complaint had been filed. On April 27, 1977, the township, in a separate action, secured

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 208.
[2] 2 Am Jur 2d, Administrative Law §§ 204, 544.
[3] 51 Am Jur 2d, Licenses and Permits § 60.
[4, 6] 61A Am Jur 2d, Pollution Control § 246.
[5] 51 Am Jur 2d, Licenses and Permits § 16.

an injunction prohibiting the Webers from removing after May 5, 1977, any topsoil, subsoil, sand or gravel from any land in the township until they had complied with the provisions of the soil removal and filling ordinance and secured a permit pursuant to that ordinance. During the pendency of the litigation against the township, the Webers secured a renewal license with a September 1, 1976, expiration date and continued to file with the DNR timely applications for renewal of the annual license. The DNR, however, did not act upon the 1976, 1977 and 1978 applications. On January 11, 1979, the Solid Waste Management Act became effective, replacing the garbage and refuse disposal act. The new act provided that a sanitary landfill shall not be constructed within 10,000 feet of an airport unless the construction, location and operation of the landfill are reviewed by the Resource Recovery Commission for hazards to the safety of aircraft. Since the Weber land was located within 2,000 feet of the Oakland-Orion Airport, a public hearing was held before the Resource Recovery Commission on August 27, 1979. The commission, on October 17, 1979, recommended to the director of the DNR that the Webers' 1978 renewal application be denied because a sanitary landfill on that site would act as an attraction for birds and would pose a significant hazard to aircraft. The director of the DNR notified the Webers by letter on November 5, 1979, of their right to show cause why the director should not proceed to give effect to the recommendation of the Resource Recovery Commission. An informal hearing pursuant to that show cause was held on November 19, 1979, and January 7, 1980. On February 19, 1980, the Webers filed an application for a solid waste disposal area renewal license pursuant to the Solid Waste Management Act. On March 14, 1980, the director of the DNR sent a letter to the Webers informing them that "your application for solid waste disposal area license submitted on September 18, 1978, is hereby denied".

On August 10, 1980, the Oakland-Orion Airport was permanently closed. The Webers thereafter filed for a renewal of their solid waste disposal area license and asked that it be processed in the nature of a request for reconsideration of the renewal application which had been denied because of the site's location near to the now closed airport. The DNR and the Webers thereafter entered into a schedule of compliance and the Webers executed a restrictive covenant as required by the Solid Waste Management Act. The DNR, on November 10, 1980, issued the Webers a solid waste disposal area license

subject to completion of the schedule of compliance, which was completed on October 8, 1981.

In March, 1981, the Webers amended their complaint in circuit court, claiming that the enactment of the Solid Waste Management Act resulted in the pre-emption of the field of solid waste management, that only a valid license from the DNR was required, and that the township could not prohibit them from operating the landfill pursuant to the license received from the DNR. The township was permitted to file a counter-complaint against the Webers and a cross-complaint against the DNR. Michigan Waste Systems, which had acquired a lease from the Webers to construct and operate a landfill on the Weber land, was added as an intervening plaintiff and filed a complaint seeking a declaration that the Solid Waste Management Act pre-empted the field of solid waste management and thereby prevented interference by the township. The parties agreed to submit the limited question of whether the November, 1980, license had been validly issued by the DNR to the trial court on the basis of 27 exhibits and 6 stipulations. The trial court, Robert L. Templin, J., determined that the November, 1980, license issued by the DNR was valid in all respects and that the license and rights granted to the Webers by the DNR were never revoked. The trial court's determination on the validity of the license was made a final judgment. The township appealed. *Held:*

1. The original license issued under the prior statute did not expire during the time the numerous timely applications for renewal of that license were pending before the DNR, since the license was with reference to an activity of a continuing nature. While the Webers undertook no construction or operation of a landfill because of being prohibited from doing so by court order, the Webers have been engaged in an activity of a continuing nature within the intent of the provisions of the Administrative Procedures Act.

2. The March 14, 1980, letter from the director of the DNR denying renewal of the Webers' license, although phrased in terms of renewal, was in actuality an attempted revocation of the license. Since the DNR failed to comply with the requirements necessary for an effective revocation pursuant to the Administrative Procedures Act, the original license had not expired at the time the DNR issued the November 10, 1980, license. Accordingly, the DNR properly treated the November, 1980, license as a renewal license for an existing facility rather than as a license for a new facility.

Affirmed.

CYNAR, J., dissented. He would hold that there was a proper denial of the renewal of the original license which, in turn, caused the original license to expire at the end of the period for an appeal from the denial. He would hold that any new license issued by the DNR would be one for a new facility rather than an existing facility and could only be issued after compliance with all the requirements of the Solid Waste Management Act, including the requirement of public hearings.

OPINION OF THE COURT

1. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — LI-
   CENSES — RENEWAL OF LICENSES — CONTINUING ACTIVITIES —
   JUDICIAL CONSTRUCTION.

   The Administrative Procedures Act provides that, if a licensee makes a timely and sufficient application for renewal of a license or a new license with reference to activity of a continuing nature, the existing license does not expire until a decision on the application has been made by the administrative agency which grants the license and, if the application is denied, the existing license does not expire until the last day for applying for judicial review of the agency order or such later date as may be fixed by the reviewing court; the activity of a continuing nature requirement should not be given a strict construction where the licensee has been unable to proceed with operations under the existing license because of a court order prohibiting any activity (MCL 24.291[2]; MSA 3.560[191][2]).

2. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — AP-
   PEAL — LIMITATION OF ACTIONS — CONTESTED CASE.

   The 60-day limitation period to bring an appeal under the Administrative Procedures Act does not begin to run until there has been a final decision in a contested case; a contested case is defined as being a proceeding in which a determination of the legal rights, duties or privileges of a named party is required to be made by an agency after an opportunity for an evidentiary hearing (MCL 24.203[3], 24.304[1]; MSA 3.560[103][3], 3.560[204][1]).

3. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — LI-
   CENSES — REVOCATION OF LICENSES — NOTICE.

   An administrative agency before revoking a license issued by the agency must give the licensee two separate notices; in the first notice the agency must state the facts or conduct which warrant the revocation of the license; if, following an informal opportunity for the licensee to show compliance, the agency

decides to continue with the revocation, the agency must commence those proceedings by giving notice to the licensee pursuant to the contested case provisions of the Administrative Procedures Act (MCL 24.271, 24.292; MSA 3.560[171], 3.560[192]).

4. LICENSES — LANDFILLS — SOLID WASTE MANAGEMENT ACT — NEW FACILITIES.

A landfill licensed under the provisions of the now repealed garbage and refuse disposal act but which was neither under construction nor in operation as of the date the Solid Waste Management Act took effect is properly treated as an existing facility rather than a new facility for the purposes of the Solid Waste Management Act and the rules promulgated pursuant to that act (MCL 299.414[2]; MSA 13.29[14][2]; 1982 AACS, R 299.4104[c]).

DISSENT BY CYNAR, J.

5. LICENSES — REVOCATION OF LICENSES — RENEWAL OF LICENSES — ADMINISTRATIVE PROCEDURES ACT — DUE PROCESS.

*The procedure mandated by the Administrative Procedures Act for the revocation of a license issued by a state administrative agency is more stringent than that required to satisfy constitutional due process requirements; the procedure adopted by an agency with respect to the nonrenewal of a license need only satisfy the requirements necessary to insure that the licensee is afforded constitutional due process.*

6. LICENSES — LANDFILLS — SOLID WASTE MANAGEMENT ACT — NEW FACILITIES.

*A landfill which was licensed pursuant to the provisions of the now repealed garbage and refuse disposal act and upon which no construction or operation had been undertaken as of the date of renewal of the license immediately following the effective date of the Solid Waste Management Act is, for the purpose of any further license under the Solid Waste Management Act, a new facility which is subject to all the licensing requirements required of a new facility (1982 AACS, R 299.4104[c]).*

*Stuart B. Cooney,* for the Webers.

*Cooper & Fink* (by *Daniel S. Cooper),* for Michigan Waste Systems.

*Beier, Howlett, Hayward, McConnell, McCann, Jones, Kingsepp & Shea* (by *Dean G. Beier*), for Orion Township.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Terrence P. Grady*, Assistant Attorney General, for the Michigan Department of Natural Resources.

Before: V. J. Brennan, P.J., and Cynar and C. W. Simon, Jr.,* JJ.

Per Curiam. Orion Township, its building inspector, and the township board appeal as of right from an order entered on November 29, 1982, declaring a solid waste disposal area license issued by the Department of Natural Resources (DNR) to Everett and Geraldine Weber "valid in all respects".

Everett and Geraldine Weber own a 190-acre tract in Orion Township, Oakland County, on which they have operated a sand and gravel mining company. On January 13, 1975, the DNR issued to the Webers a solid waste disposal area license having an expiration date of September 1, 1975. Upon timely application, the Webers were issued a renewal license having an expiration date of September 1, 1976. In 1976, 1977, and 1978, the Webers made timely applications for a renewal of the license, but in each case the applications were not acted on by the DNR. On September 26, 1975, the Webers filed the complaint in the instant case in Oakland County Circuit Court, seeking a declaration that an Orion Township zoning ordinance (which prevented them from operating a landfill) was unconstitutional. On October 20, 1975, Orion Township and its board and building inspector

---

* Circuit judge, sitting on the Court of Appeals by assignment.

moved for accelerated judgment, which was granted on December 2, 1975. The trial court's order granting accelerated judgment was reversed by this Court on December 8, 1976, and the case was remanded for trial. That aspect of the case is still pending below.

On January 11, 1979, the Solid Waste Management Act, 1978 PA 641, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.* (Act 641), became effective and replaced the garbage and refuse disposal act, 1965 PA 87, MCL 325.291 *et seq.;* MSA 14.435 *et seq.* (Act 87), under which the Webers' original license was issued.

Act 641 provided that a sanitary landfill "shall not" be constructed within 10,000 feet of an airport runway unless the construction, location, and operation of the landfill are reviewed by the Resource Recovery Commission (RRC) for hazards to the safety of aircraft. MCL 299.430(5); MSA 13.29(30)(5).

Pursuant to MCL 299.430(5); MSA 13.29(30)(5), the DNR published notice on August 13, 1979, that a public hearing would be held before the RRC on August 27, 1979, to consider the potential bird hazard which the use of the Webers' tract as a landfill would pose for the Oakland-Orion Airport. The tract was located within 2,000 feet of the airport. After a determination that the tract would act as an attraction for birds and would pose a significant hazard to aircraft, by a resolution dated October 17, 1979, the RRC recommended to the director of the DNR that he deny the Webers' 1978 renewal application. On November 5, 1979, the DNR director notified the Webers by letter of his intent to deny their application for relicensure due solely to the potential bird hazard posed by their tract.

This letter also informed the Webers that a show cause "hearing" would be held on November 19, 1979, to give them an opportunity to demonstrate any operational, design, or material changes in the tract which would permit a renewal of their license and "to otherwise show cause" why the proposed revocation should not take place. On November 19, 1979, an informal show cause hearing was held. After adjournment, the informal hearing was completed on January 7, 1980.

On February 19, 1980, the Webers applied for a solid waste disposal area license renewal under the newly enacted Solid Waste Management Act (Act 641). On March 14, 1980, the DNR Director informed the Webers by letter that their 1978 application for relicensure was denied. On August 10, 1980, the Oakland-Orion Airport was permanently closed. On October 25, 1980, the DNR and the Webers entered a schedule of compliance pursuant to § 14 of Act 641, MCL 299.414(2); MSA 13.29(14)(2).[1] On November 9, 1980, the Webers executed a restrictive covenant pursuant to § 6 of Act 641, MCL 299.415; MSA 13.29(15). The DNR issued the Webers a solid waste disposal license on November 10, 1980, conditioned, however, on com-

---

[1] "(2) The department shall not license a landfill facility operating without an approved hydrogeologic monitoring program until the department receives a hydrogeologic monitoring program and the results of the program. The director shall use the results of this information in conjunction with other information about the facility to determine a course of action regarding further licensing of the facility consistent with section 4005 of title 2 of the solid waste disposal act, 42 U.S.C. 6945 and this act. In deciding a course of action, the director shall consider, at a minimum, the health hazards, environmental degradation, and other public or private alternatives. *The director may revoke a license or issue a timetable or schedule to provide for compliance for the facility or operation which specifies a schedule of remedial measures, including a sequence of actions or operations, which leads to compliance with this act* within a reasonable time period, which shall not extend beyond September 1, 1984. This subsection shall take effect April 1, 1980." (Emphasis added.)

pletion of the schedule of compliance. These conditions were complied with on May 20, 1981, when the Webers' engineering plans were accepted and on October 8, 1981, when the final hydrogeological report was determined by the DNR to be satisfactory.

On September 16, 1981, Orion Township filed a counterclaim in the instant case against the Webers and a "cross-complaint" against the DNR, seeking a judgment "[d]etermining that the mandatory requirements of Act 641 of Public Acts of 1978 were not complied with in the issuance of a solid waste disposal area license to the counter-defendants Weber".

Intervening plaintiff-appellee, Michigan Waste Systems, is in the business of constructing and operating sanitary landfills. On April 20, 1982, Michigan Waste Systems acquired by mesne assignments a lease from the Webers to construct and operate a sanitary landfill on the Webers' land. On May 6, 1983, Michigan Waste Systems intervened upon motion and filed a complaint seeking, *inter alia,* a declaration that the Webers are "lawful licensees under the provisions of Act 641 of Public Acts of 1978 and that said act preempts the field of solid waste management, preventing interference by the Township of Orion".

The case was tried solely on the issue of the validity of the license held by the Webers. No testimony was taken. Twenty-seven exhibits were admitted by agreement and the parties stipulated to six matters of fact. On November 29, 1982, the trial court determined that "the solid waste disposal area license issued by the Department of Natural Resources on November 10, 1980, is valid in all respects" and that the license and rights thereby granted to the Webers by the DNR were never revoked.

An amended order was entered December 8, 1982, certifying the determinations of the court as a final judgment on the license issue.

Orion Township claims that the trial court erred in holding that the Webers had a valid license which had never been revoked.

Factually, the closing of the Oakland-Orion Airport eliminated the sole condition which prevented the DNR from renewing the Webers' license. After the airport closed, the Webers again applied for renewal of their license. Pursuant to MCL 299.414(2); MSA 13.29(14)(2),[2] and 1982 AACS, R 299.4302(1),[3] the DNR entered into a schedule of compliance with the Webers as a condition precedent to issuance of a license under Act 641. In so doing, the DNR treated the Webers' tract as an already existing landfill and not as a new or proposed facility.

The crux of the township's argument on appeal is that the original landfill license issued under Act 87 had expired as a matter of law and the DNR should not have renewed that license pursuant to the provisions in Act 641 governing existing landfills.

MCL 24.291(2); MSA 3.560(191)(2) of the Administrative Procedures Act (APA) provides:

"When a licensee makes timely and sufficient application for renewal of a license or a new license *with reference to activity of a continuing nature,* the existing

[2] See fn 1 *supra.*

[3] "Rule 302. (1) Engineering plans, hydrogeologic evaluations, and the surface and groundwater monitoring program for existing sanitary landfills shall be reviewed by the solid waste control agency to assure compliance with these rules. As required by section 14(2) of the act, landfills that are not in compliance with these rules may be issued a timetable or schedule of remedial measures which will lead to compliance within a reasonable time period not extending beyond September 1, 1984."

license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order or a later date fixed by order of the reviewing court. This subsection does not affect valid agency action then in effect summarily suspending such license under section 92." (Emphasis added.)

In our opinion, the DNR's failure to act on the Webers' timely applications for renewal of the 1976 license and the DNR's failure to follow procedures for revocation of the license prevented that license from expiring.

Orion Township first argues that, because the Webers had not yet begun construction on their landfill, the Webers' license does not fit into the "with reference to activity of a continuing nature" language and, therefore, this statute is inapplicable.

Act 87 required compliance with local ordinances. See MCL 325.292; MSA 14.435(2). On January 13, 1975, the Webers' solid waste disposal area license was issued by the DNR after the detailed engineering design plans and necessary reports were submitted to the DNR and the Health Department for review. On that same date, the Webers were also informed by a letter sent from the Solid Waste Management Environmental Division that their plans were approved and that three additional construction and/or maintenance conditions had to be followed before the landfill was operational to insure that the landfill satisfied the DNR's standards for construction and environmental protection. The 1976 (renewed 1975) license contained these conditions as stipulations.

To comply with Orion Township's Ordinance No. 28 (as required by Act 87), the Webers applied for

a permit in 1973 and again in 1975 to operate a landfill within Orion Township. In February, 1976, Ordinance No. 28 was repealed by Ordinance No. 40, which also required a permit. Had the Webers begun construction without the permit, they would have been subject to criminal prosecution (misdemeanor) for violation of Ordinance No. 40. In 1975, the Webers brought suit challenging the constitutionality of Ordinance No. 28. The challenge now involves Ordinance No. 40 and is still pending below. Furthermore, on May 5, 1977, the Webers were permanently enjoined from removing topsoil, subsoil, and/or gravel from their land until they complied with Ordinance No. 40. Thus, the Webers ran into a legal roadblock and a Catch-22 situation. They did possess a valid license, but they could not legally engage in any activity because of the court order and the pending suit.

We believe that the circumstances surrounding this case warrant our conclusion that a strict interpretation of the contested phrase in MCL 24.291(2); MSA 3.560(191)(2) would penalize licensees such as the Webers who have complied with the DNR's requirements for issuance of a license, have been issued a license, and also seek judicial review of an ordinance which has prevented any construction of the DNR-licensed tract. But for the court order and the pending litigation, the Webers would have been engaging in an activity of a continuing nature, operation of a landfill. Therefore, we limit our holding to the facts in the instant case, and we find that MCL 24.291(2); MSA 3.560(191)(2) applies even though the Webers had not begun construction.

Orion Township argues next that, even if MCL 24.291(2); MCL 3.560(191)(2) did extend the Webers' Act 87 license, the license expired as a matter

of law on May 14, 1980. Therefore, the township contends that the Webers had all their rights under the license terminated long before the DNR issued the new license in November, 1980.

MCL 24.291(2); MSA 3.560(191)(2) provides that "the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied * * *, until the last day for application for judicial review of the agency order".

Orion Township claims that the last day for applying for judicial review after the Webers' 1978 application for renewal was denied was May 14, 1980, 60 days after the mailing of the March 14, 1980, letter from the DNR informing the Webers of that decision.

MCL 24.304(1); MSA 3.560(204)(1) states:

"A petition shall be filed in the court within 60 days after the date of mailing notice of the final decision or order of the agency, or if a rehearing before the agency is timely requested, within 60 days after delivery or mailing notice of the decision or order thereon. The filing of the petition does not stay enforcement of the agency action but the agency may grant, or the court may order, a stay upon appropriate terms."

*Ajluni v West Bloomfield School Dist,* 59 Mich App 213, 215; 229 NW2d 385 (1975), *rev'd on other grounds* 397 Mich 462 (1976), states:

"The judicial review provisions and the 60 day time limitation contained in the Administrative Procedures Act are only involved if there has been a final decision in a *contested case."* (Emphasis in the original.)

MCL 24.203(3); MSA 3.560(103)(3) defines a contested case as:

"[A] proceeding, including rate-making price-fixing, and licensing in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. When a hearing is held before an agency and an appeal from its decision is taken to another agency, the hearing and the appeal are deemed to be a continuous proceeding as though before a single agency."

The plaintiffs claim that the March 14, 1980, letter sent by the DNR was not a final decision in a contested case, and, therefore, the 60-day period does not apply to the instant case.

Conversely, defendant township argues that, because a "contested hearing" or evidentiary hearing was held and the Webers were given adequate notice, the DNR complied with the requirements of the Administrative Procedures Act and a final agency decision in a contested case is evidenced by the March 14, 1980, letter.

In our opinion, the March 14, 1980, letter denying renewal of the license, although phrased in terms of renewal, was in actuality an attempted revocation of the license. The November 5, 1979, intent to deny letter sent by the DNR informed the Webers that a hearing would be held where the Webers could demonstrate changes in their operation which would "lawfully permit renewal of [their] license and to otherwise show cause, if any, why the *proposed revocation* should not take place". (Emphasis added.)

Our review of the minutes of the hearing reveals that it was categorized by the DNR as an informal compliance hearing to give the Webers the opportunity to demonstrate ways in which they could eliminate the bird hazard problem posed by their tract to aircraft in the vicinity. Thus, the Webers

were given an opportunity to show how their license could lawfully be renewed and why it should not be revoked.

MCL 24.292; MSA 3.560(192) states:

"Before the commencement of proceedings for suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license, an agency shall give notice, personally or by mail, to the licensee of facts or conduct which warrant the intended action. The licensee shall be given an opportunity to show compliance with all lawful requirements for retention of the license. If the agency finds that the public health, safety or welfare requires emergency action and incorporates this finding in its order, summary suspension of a license may be ordered effective on the date specified in the order or on service of a certified copy of the order on the licensee, whichever is later, and effective during the proceedings. The proceedings shall be promptly commenced and determined."

In *Rogers v State Board of Cosmetology,* 68 Mich App 751, 757-758; 244 NW2d 20 (1976), *lv den* 397 Mich 849 (1976), the Court held that two notices are required for license revocation under the APA.

"The first, required by § 92, states the facts or conduct which warrant any intended action. This notice may be given personally or by mail. The second, following an informal opportunity to comply, commences the proceedings and must follow the requirements established by § 71 of the act."

In the instant case, the DNR complied with § 92, but the DNR did not follow through and issue a second notice for commencement of revocation proceedings under § 71 of the APA, MCL 24.271; MSA 3.560[171]. "A revocation would follow 'contested case' procedures because a revocation is a 'determination of legal rights, duties or privileges

of a named party', the definition of a 'contested case' found in MCL 24.303(3); MSA 3.560(103)(3)." 68 Mich App 755.

MCL 299.417(3); MSA 13.29(17)(3) provides that a director may revoke a license after reasonable notice and hearing if the disposal area is not being constructed or operated in accordance with the approved plans or the Solid Waste Management Act and rules promulgated under the act.

In the instant case, the director sought to revoke the Webers' license without affording them the opportunity of notice and a contested case hearing. Therefore, we hold that the Webers' license did not expire on May 14, 1980, as defendant township claims, and we affirm the trial court's determination that the license issued to the Webers was never revoked and was valid in all respects.

Orion Township also claims that the trial court erred in determining that the Webers' tract qualified as an existing landfill although no construction had actually begun and no waste had been deposited there.

1982 AACS, R 299.4104(c) defines a "new facility" as a "disposal area that is *proposed* for construction or an *expansion, enlargement,* or *alteration* of an existing disposal area beyond the horizontal or vertical boundaries indicated in the construction permit or on engineering plans approved before January 11, 1979". (Emphasis added.) Although no construction had begun on the Webers' tract, the DNR treated the site as an existing landfill and not as a "new facility" for the purposes of the provisions of Act 641.

We agree with the DNR's classification because, in our opinion, the Webers' tract was not a "new facility" as contemplated by Act 641. The tract was neither newly proposed for construction nor

were there any changes made to the engineering plans already approved by the DNR. The DNR had approved the plans under Act 87 and had issued a valid license. Therefore, the tract, in 1980, was not one that was newly proposed for construction. Although construction had not begun and the tract was not operational, we do not believe that these facts were dispositive in the DNR's determination of how to classify the tract. The DNR, as the licensing agency, was in a better position to determine whether the tract was an existing landfill or a "new facility". Therefore, we will not second-guess the agency's decision and overturn its determination.

Act 641 governs the construction of new facilities and the monitoring of already existing sites. The licensing of all disposal areas is mandated. See MCL 299.413; MSA 13.29(13).

Once a license is issued, the director or health officer or their representatives are empowered "to enter at any reasonable time, * * * in or upon private property licensed under [Act 641] for the purpose of inspecting or investigating conditions relating to the storage, processing, or disposal of any material". MCL 299.415(3); MSA 13.29(15)(3). Thus, there are built-in safeguards to insure that a licensee continues to comply with Act 641 and the DNR's standards of operation.

1982 AACS, R 299.4302(1)[4] mandates review of engineering plans, hydrogeologic evaluations and the surface and ground water monitoring program for existing landfills to assure compliance with Act 641. MCL 299.414(2); MSA 13.29(14)(2)[5] empowers the director to issue a schedule of remedial measures for existing landfills to bring them into

---

[4] See fn 3 *supra.*

[5] See fn 1 *supra.*

compliance with Act 641. See also 1982 AACS, R 299.4302(1).

In our opinion, neither the trial court nor the DNR erred in treating the Webers' tract as an existing landfill. We believe that by enacting MCL 299.414(2); MSA 13.29(14)(2), the Legislature contemplated gray area situations such as the one faced by the Webers where a landfill has already been licensed under Act 87 and must also be licensed under Act 641. If a site licensed under Act 87 is found not to be in compliance with Act 641, then the schedule of compliance as an alternative method to revocation of the license is designed to bring the tract up to the proper standards. In the instant case, the Webers' tract was brought into compliance pursuant to MCL 299.414(2); MSA 13.29(14)(2). After the Webers completed the schedule of compliance, the DNR licensed the tract under Act 641. We hold that the trial court's determination that the tract was an existing landfill was correct and we affirm the validity of the Webers' license.

Affirmed. We retain no further jurisdiction.


CYNAR, J. *(dissenting)*. I must dissent in this case for two reasons. The first reason is that the facts indicate that the Webers' license was not *revoked* as the majority states; it was simply not renewed. In its letter to the Webers dated March 14, 1980, the Department of Natural Resources (DNR) stated: "[Y]our application for *[sic]* solid waste disposal area license submitted September 18, 1978, is hereby denied". The unequivocal meaning of this letter is that on receipt of this notice the Webers no longer held a license under the garbage and refuse disposal act, 1965 PA 87, MCL 325.291 *et seq.;* MSA 14.435 *et seq.* (Act 87). The majority

notes that the Webers sought *renewal* of the license, the parties' joint exhibits show that the Webers applied for *renewal* of the license in 1975, 1976, 1977 and 1978, and Act 87 provides for *renewal* of disposal licenses. These facts make it inconsistent to treat the DNR's decision not to renew the license as an attempted "revocation" of the license. Neither the DNR nor the other appellees have offered a satisfactory reason why this letter should not be given its intended effect, *i.e.,* refusal to renew the license.

The majority suggests that the letter should not be given its intended effect because the Webers were denied procedural due process. The majority relies on *Rogers v State Board of Cosmetology,* 68 Mich App 751; 244 NW2d 20 (1976), *lv den* 397 Mich 849 (1976). However, the case must be distinguished. The facts of *Rogers* indicate that the Court was dealing with the revocation of a license, not renewal of a license as in this case. Because we are dealing with a renewal, it is my opinion that the less stringent due process standard announced in *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976), applies. I am satisfied that the requirements of *Bundo* have been met. Therefore, the license was not renewed and the Webers no longer held a license.

This brings me to my second and perhaps more important disagreement with the majority. Because the license under Act 87 was not renewed, the Webers were thus required to comply with the Solid Waste Management Act, 1978 PA 641, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.* (Act 641), which replaced Act 87. The Webers and the DNR had to comply with the construction permit provisions of Act 641, including the important public hearing subsections which provide the public with

an opportunity to voice its views on the proposed landfill.

The majority does not feel the construction permit provisions apply because the Webers held an approved license under Act 87 and thus fell within the compliance timetable provisions of Act 641. MCL 299.414(2); MSA 13.29(14)(2) and 1982 AACS, R 299.4302(1). These provisions permit licensing of existing landfills without the proceedings required for granting construction permits to new landfills. However, it is clear that the Legislature only intended to exempt previously constructed landfills from the permit application provisions. The parties agree that no construction of the landfill has begun and no waste has been received on the property. Furthermore, 1982 AACS, R 299.4104(c) defines a new facility, *inter alia,* as one "proposed for construction" and requires that a construction permit be obtained. Merely holding a license under Act 87 which was not renewed does not create an existing landfill under Act 641. The legislative and administrative schemes set out in Act 641 and the rules promulgated pursuant to Act 641 give no indication that an unconstructed future landfill should avoid the public notice and hearing requirements of the construction permit process. The Webers' proposed but unconstructed site does not qualify as an existing landfill, and they must thus comply with the construction permit provisions of Act 641.

For the above reasons, I dissent from the majority opinion.